**AFFIRM; and Opinion Filed March 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00472-CV

**TODD DYER, PHRK INTERVENTION, INC., PHRK INTERVENTION, LLC, AND SOUTHSIDE DEVICE, LLC, Appellants**

**V.**

**MEDOC HEALTH SERVICES, LLC AND TOTAL RX CARE, LLC, Appellees**

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-18-00822

# OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

Appellees Medoc Health Services, LLC and Total Rx Care, LLC sued appellants Todd Dyer, PHRK Intervention, Inc., PHRK Intervention, LLC, and Southside Device, LLC, alleging causes of action for misappropriation of trade secrets, tortious interference, civil conspiracy, and conversion.[1] Appellants filed a motion to dismiss pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (the TCPA). Following a hearing, the trial court denied the motion.

In four issues, appellants assert the trial court erred by denying the motion to dismiss because the TCPA applies to appellees' claims; appellees failed to produce clear and specific evidence of a prima facie case for each essential element of their causes of action; and appellants

---

[1] Appellees also sued a number of other defendants. Those claims are not a subject of this appeal.

produced evidence of each essential element of a valid defense and, if the motion to dismiss should have been granted, appellants are entitled to an award of attorneys' fees, costs, and sanctions. In a fifth issue, appellants argue that, included within the first four issues, is the "broader issue of whether the trial court committed error in denying Appellants' TCPA motion to dismiss."

We conclude appellants failed to carry their burden of establishing the TCPA applies to appellees' claims. Accordingly, we affirm the trial court's denial of appellants' motion to dismiss.

**Background**

Medoc is a healthcare management services company whose customers include pharmacies, laboratories, healthcare imaging providers, surgical device and durable equipment providers, and practice management service providers. Total Rx is a community pharmacy that provides medications and complex pharmaceutical products to patients. Total Rx is an affiliate and customer of Medoc. Medoc manages the "administrative side" of Total Rx's business, including human resources, marketing, accounting, and information technology.

Appellees use a proprietary software management system to efficiently process prescriptions from physicians, as well as orders and shipments of pharmaceuticals. Kevin Kuykendall, the chief executive officer of Medoc and manager of Total Rx, is aware of no other software that has the state-of-the-art capabilities of appellees' software. Appellees also possess a significant amount of confidential business information, including customer lists, sales data, pharmacy orders for medicines, and patient prescription data.

Appellees do not publicly sell, share, or disclose their proprietary software. They also take steps to protect their proprietary software and confidential business information, including requiring valid login credentials to access this information and implementing network and computer security protocols.

Nicolas Basiti, Medoc's former chief technology officer, was one of the Medoc employees who developed the proprietary software. Between July 2017 and October 2017, Basiti and Dyer,

the principal owner and primary manager of the PHRK Intervention entities and Southside, exchanged over 1,000 text messages. Some of those messages discussed "a business thing" proposed by Basiti that might be "worth something." Basiti told Dyer the proposal included an "entire infrastructure," and he was "ready to transfer it all." Basiti indicated he was "duplicating every database file folder system," as well as "[e]very email every file every scripts every contract." Basiti and Dyer discussed how to divide the "gross revenue" they would receive "off this."

After Basiti told Dyer they needed a "server or two" to "handle" the information, Dyer purchased two servers. Basiti "set up" the servers and indicated he would "show [Dyer] how to look at the data on them." Dyer unsuccessfully attempted to access the information on the servers with a user name and password provided by Basiti. He also requested that Basiti "search" for specific information and send it to Dyer's email address. Finally, Dyer asked Basiti if the software could be used by Southside for case reporting and inventory "exactly" how Medoc was using it.

After appellees learned Basiti was attempting to misappropriate their proprietary software and other confidential information, they conducted an investigation and discovered the text messages between Basiti and Dyer. Basiti subsequently signed an acknowledgment stating he had conspired with Dyer to use and disclose Medoc's confidential information, proprietary software, and intellectual property for the purpose of aiding and abetting a competitive business. A forensic analysis of the servers purchased by Dyer showed that information belonging to Medoc was on the servers.

Appellees sued appellants, asserting claims for misappropriation of trade secrets, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001–.008, tortious interference with existing contract and with prospective business relations, civil conspiracy, and conversion. As a factual basis for their

claims, appellees relied on the text messages, as well as "discussions" and "negotiations," between Basiti and Dyer.[2] Appellees sought both damages and injunctive relief.[3]

Appellants filed a motion to dismiss under the TCPA, asserting (1) the text messages between Basiti and Dyer were communications that constituted the exercise of the right of free speech, of association, and to petition; (2) appellees could not produce clear and specific evidence of each essential element of their claims; and (3) appellees could not overcome appellants' valid defenses. In support of their motion, appellants relied on Dyer's declaration in which he stated he was not in competition with appellees and never used the proprietary software. Although Dyer admitted he explored the possibility of having Basiti create software for Southside, he stated he believed Basiti would use his personal knowledge to create the software and would not copy appellees' software.

Dyer also stated he learned in April or May of 2017 that a former partner of Medoc had been contacted by an FBI agent. The agent asked questions about Medoc, and Dyer's name "came up" during the questioning. Dyer stated he "later" learned from Basiti that Kuykendall had directed Basiti to delete data and communications from Medoc's computer system in response to the federal investigation and "upon information and belief" Basiti used Dyer's servers to preserve that information. Dyer also stated he had seen comments on an internet site indicating Medoc was being investigated by the FBI.

On February 16, 2018, Dyer was served with a subpoena from a federal grand jury requiring him to produce a "copy of any electronic computer image or server copy relating to

---

[2] The basis of a legal action is determined based on the claims made in the non-movant's pleadings. *Hersh v Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

[3] Appellees obtained a temporary restraining order that required appellants to immediately return or refrain from retaining, using, accessing, or disclosing appellees' proprietary software and confidential information. Before the trial court held a hearing on appellees' request for a temporary injunction, appellants filed their motion to dismiss. After the trial court denied the motion to dismiss, appellants filed this appeal, which resulted in an automatic stay of the trial court proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 54.014(b). On February 14, 2019, we lifted the stay to allow appellees to proceed with discovery and a hearing on their application for a temporary injunction.

Medoc Health Services, LLC, and/or Total Rx Care, LLC, including any electronic files provided to Todd Dyer by Nicolas Basiti." Dyer complied with this subpoena.

Appellees responded to the motion to dismiss, arguing the TCPA did not apply to any of their claims against appellants and, even if it did, they could establish a prima facie case against appellants on each of the claims. As relevant here, appellees relied on a declaration from Kuykendall in which he described appellees' proprietary software and confidential business information and the investigation into whether Basiti was misappropriating appellees' information, Basiti's acknowledgment that he conspired with Dyer to use and disclose appellees' software and information, and the text messages between Basiti and Dyer.

After conducting a hearing, the trial court denied the motion to dismiss, and appellants brought this interlocutory appeal.

### The TCPA

The TCPA "protects citizens . . . from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

"To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of [the] First Amendment Rights" protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679

(Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Elliott*, 564 S.W.3d at 847. However, even if the non-movant satisfies this requirement, the trial court must still dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [non-movant's] claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also Youngkin*, 546 S.W.3d at 679–80.

### Standard of Review

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Rodriguez v. Gonzales*, No. 14-17-00667-CV, 2018 WL 6614153, at *2 (Tex. App.—Houston [14th Dist.] Dec. 18, 2018, no pet. h.); *see also Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 773 (Tex. App.—Dallas 2018, pet. denied). "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a).

Whether the TCPA applies to appellees' claims is an issue of statutory interpretation that we also review de novo. *Youngkin*, 546 S.W.3d at 680. In conducting our analysis, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *Harper*, 562 S.W.3d at 1l; *see also Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011) ("Legislative intent . . . remains the polestar of statutory construction." (internal citations omitted)).

–6–

We construe the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

We are required to consider both the specific statutory language at issue and the statute as a whole. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see also Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an act as a whole rather than from isolated portions of it."). We endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *In re Office of Att'y Gen.*, 422 S.W.3d at 629; *see also Norman*, 342 S.W.3d at 58 (noting courts should "never" apply requirement that Legislature clearly and unambiguously express its intent to waive immunity "mechanically to defeat the law's purpose or the Legislature's intent"). The supreme court has specifically directed us to adhere to the definitions supplied by the Legislature in the TCPA. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Youngkin*, 546 S.W.3d at 680. However, in the process of applying those "isolated" definitions, we are required to construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680–81.

## Analysis

As the movants, appellants were required to show by a preponderance of the evidence that the TCPA applies to appellees' legal action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).[4] In their first issue, appellants assert they met their initial burden of establishing appellees' claims are based on, related to, or in response to appellants' exercise of their right of association, right of free speech, or right to petition.

---

[4] The parties do not dispute that appellees' lawsuit is a "legal action" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (defining "legal action" to include a lawsuit, cause of action, or petition).

Each of these protected rights requires a "communication" as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2)–(4). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The text messages between Dyer and Basiti are "communications" under the TCPA.

*Right of Association*

Appellants first argue they met their burden of establishing the TCPA applies to appellees' claims because Basiti and Dyer had a "common interest" of pursuing "a course of action allegedly designed to use Medoc's confidential information to steal Medoc's business." In other words, appellants contend Basiti and Dyer had a right to associate with each other to pursue the "common interest" of allegedly misappropriating and selling or using appellees' proprietary software and confidential business information.

The TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2); *see also Kawcak v. Antero Res. Corp.*, No. 02-18-00301-CV, 2019 WL 761480, at *6 (Tex. App.—Fort Worth Feb. 21, 2019, no pet. h.). In *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015) (*Coleman I*), *rev'd on other grounds*, *Coleman II*, 512 S.W.3d at 900–01,[5] we considered whether employees of ExxonMobil were exercising their right of association under the TCPA when they communicated among themselves regarding another employee's job performance, compliance

---

[5] We concluded in *Coleman I* that the communications at issue were not made in the exercise of the right of free speech or of association as defined by the TCPA. 464 S.W.3d at 845–46. The supreme court reversed our opinion on the basis that the communications, although private, related to a matter of public concern and, therefore, constituted the exercise of the right of free speech as defined by the TCPA. *Coleman II*, 512 S.W.3d at 901–01. The supreme court "express[ed] no opinion on whether the challenged communications were made in the exercise of the right of association under the TCPA." *Id.* at 902.

with ExxonMobil's safety policies, and ExxonMobil's investigation into the employee's failure to gauge a tank and falsification of documents. *Id.* at 846–47.

We noted the communications appeared to fall within the plain language of the TCPA's definition of the exercise of the right of association but concluded that applying only the text of the definition "would result in giving constitutional right of association protection to virtually any private communications between two people about a shared interest." *Id.* at 847. We held this was "an absurd result" that did not promote the purpose of the TCPA to curb strategic lawsuits against public participation. *Id.*; *see also Kawcak*, 2019 WL 761480, at *13 ("A definition of 'common' that focuses on the public or group implements both purposes [of the TCPA] while one that focuses on any interest shared between two people serves neither."). We interpreted the TCPA's definition of "right of association" in light of the purpose of the statute and concluded "it would be illogical for the [TCPA] to apply to situations in which there is no element of public participation." *Coleman I*, 464 S.W.3d at 847. We further concluded that to "constitute an exercise of the right of association under the [TCPA], the nature of the 'communication between individuals who join together' must involve public or citizen's participation." *Coleman I*, 464 S.W.3d at 848; *see also Backes v. Misko*, 486 S.W.3d 7, 20–21 (Tex. App.—Dallas 2015, pet. denied) (concluding communications relating to alleged conspiracy that were made "within the horse community" and on social media constituted exercise of right of association under TCPA).

Because the text messages between Basiti and Dyer were private communications related to an alleged conspiracy between the two men and did not involve public or citizen's participation, it would be "illogical" to apply the TCPA to those communications. *See Coleman I*, 464 S.W.3d at 847; *Kawcak*, 2019 WL 761480, at *17 ("[T]he plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of 'the right of association' requires more than two tortfeasors

–9–

conspiring to act tortiously for their own selfish benefit.").[6]  Further, construing the statute such that appellants would have a "right of association" based solely on Dyer's and Basiti's private communications allegedly pertaining to the misappropriation of appellees' proprietary software and confidential business information is an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation.  *See Youngkin*, 546 S.W.3d at 681; *Coleman I*, 464 S.W.3d at 848.

We recognize that other courts of appeals have concluded the TCPA's protection of the right of association applies to claims for the misappropriation of trade secrets, conversion, and tortious interference based on (1) communications between the alleged tortfeasors and with individuals they were attempting to hire, and (2) the "common interest" of a competing business enterprise that was allegedly using the misappropriated confidential information.[7]  But, absent an intervening change in law, we follow our own precedent.  *In re A.C.*, 559 S.W.3d 176, 182 (Tex. App.—Dallas 2017), *aff'd*, 560 S.W.3d 624 (Tex. 2018).  Further, in those opinions, our sister courts did not address whether the right of association under the TCPA requires public participation or whether any public participation was present in those cases.  *See Kawcak*, 2019 WL 761480, at *15–16 (noting courts of appeals that determined TCPA's right of association encompassed claims for misappropriation of trade secrets, conspiracy, and tortious interference

---

[6] *See also Univ. Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, No. 01-17-00555-CV, 2018 WL 6695813, at *20 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (Keyes, J., concurring) (concluding that "right of association" under TCPA does not "protect the alleged conduct here, which involves conspiring or colluding to misappropriate or convert trade secrets and other protected information without any identified act of speech or associations on the part of [movants] that can be given a non-tortious interpretation"); *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 194 (Tex. App.—El Paso 2017, no pet.) (noting, in dicta, that allowing "common purpose" for the association to be "something improper" could lead to "anomalous result" of allowing participants "to a criminal conspiracy" to require non-movant to make clear and specific showing of prima facie case in as few as sixty days while a "single defendant, accused of much less culpable conduct, might have to engage in years of discovery before seeking vindication").

[7] *See Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810, at *12 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet. h.); *Morgan v. Clements Fluids S. Tex., LTD.*, No. 12-18-00055-CV, 2018 WL 5796994, at *3 (Tex. App.—Tyler Nov. 5, 2018, no pet.); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. filed) (mem. op.); *Elite Auto Body LLC v. Autocraft Bodywerks Inc.*, 520 S.W.3d 191, 205 (Tex. App.—Austin 2017, pet. dism'd).

focused on "communication" and "assume[d] that the interest of the tortfeasors was a common one under the TCPA").

We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or in response to appellants' exercise of a right of association as defined by the TCPA.

*Right of Free Speech*

Appellants next argue they met their burden of establishing the TCPA applies to appellees' claims because (1) the text messages between Basiti and Dyer were related to an alleged conspiracy "to utilize [appellees'] healthcare related software" and to sell that software to appellees' competitors for economic benefit and (2) Dyer's alleged conspiratorial actions, and the communications relating to those actions, were undertaken because of the investigation of Medoc by the FBI.

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government, a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7).[8] Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech under the TCPA. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

We turn first to appellants' contention the text messages between Basiti and Dyer were made in connection with health and economic well-being, both matters of public concern under the TCPA. In the text messages, Basiti and Dyer did not discuss any issue relating to health or any

---

[8] Appellants do not argue any communications were related to a good, product, or service in the marketplace. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7)(E). We, therefore, express no opinion regarding the applicability of that prong of the statute.

economic well-being (other than their own). The TCPA, however, does not require that the communications specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter. *Coleman II*, 512 S.W.3d at 900. Rather, the TCPA applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Id.*

Dyer and Basiti allegedly discussed misappropriating, selling, and using appellees' proprietary software and other confidential information—information appellees had taken specific steps to protect and keep private. We cannot conclude communications discussing allegedly tortious conduct are tangentially related to a matter of public concern simply because the proprietary and confidential information that was to be misappropriated belonged to a company in the healthcare industry or because the alleged tortfeasors hoped to profit from their conduct. *See In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.) (concluding TCPA "has its limits" and not every communication falls under protection of statute); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.) (concluding communications made in connection with business dispute were not matter of public concern under TCPA). Indeed, construing the definition of "public concern" in the TCPA to encompass Basiti's and Dyer's text messages would leave no communications outside the reach of the TCPA, would not further the purpose of the TCPA to curb strategic lawsuits against public participation, and would lead to an absurd result. *See Youngkin*, 546 S.W.3d at 681 (noting appellate court must consider purpose of statute when construing application of TCPA).

Appellants also argue that Dyer's alleged actions, and the communications relating to those actions, were undertaken because of an ongoing FBI investigation, which is an issue of public concern. However, the text messages do not mention the FBI investigation, and Dyer's claimed subjective reasons for allowing Basiti to store appellees' proprietary software and confidential

–12–

information on Dyer's servers are not "communications" as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (communication includes "making or submitting" statement or document in any form or medium).

Finally, to the extent appellants contend any communications about, or with, the FBI about the investigation relate to a matter of public concern, they were required to establish a nexus between appellees' claims and the conduct protected by the statute. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. filed); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (requiring that "legal action" be based on, related to, or in response to movant's exercise of statutory right). In order to trigger the TCPA's protection, the "legal action" must be "factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of 'exercise of the right of free speech,' petition, or association." *Grant*, 556 S.W.3d at 879; *see also Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (concluding TCPA protections encompass "legal action" that is factually predicated upon or relates to alleged conduct that would fall within the TCPA's definition of the exercise of the right to petition). Appellees' claims are not based on, related to, or in response to any communications between Dyer and any other person about the FBI investigation or on Dyer providing appellees' proprietary software and confidential information to the FBI. Rather, appellants were sued because they allegedly committed tortious conduct by misappropriating appellees' proprietary software and confidential information with the intent to sell or use that property. *See Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. filed) (concluding movant was not sued in response to her affidavit and deposition testimony but because she allegedly committed tortious conduct during dissolution of law firm and formation of new firm); *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd) (concluding any activities by the movant "that are not a factual predicate for [the non-movant's] claims are simply not pertinent to the inquiry" of whether TCPA applies to claims).

We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or in response to appellants' exercise of their right of free speech as defined by the TCPA.

*Right to Petition*

Appellants finally contend they established the TCPA applies to appellees' claims because Dyer's "actions and communications related to such actions were undertaken" due to the FBI investigation of Medoc.

The TCPA sets out a number of ways in which a communication can be the "exercise of the right to petition." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4); *see also Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 283–84 (Tex. App.—Dallas 2015, pet. denied) (noting TCPA broadly defines the "exercise of the right to petition"). Appellants contend Dyer's communications and actions constituted the exercise of the right to petition because they were "in or pertaining to a judicial proceeding," "in connection with an issue under consideration or review by a . . . judicial, or other governmental body," or "reasonably likely to encourage consideration or review of an issue by a . . . judicial, or other governmental body." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i), (B)–(C).

We first consider appellants' assertion that the text messages between Basiti and Dyer were made "in or pertaining to a judicial proceeding." "[T]he ordinary meaning of 'a judicial proceeding' is an actual, pending judicial proceeding." *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.—Dallas 2016, pet. denied). A "judicial proceeding" is "any proceeding initiated to procure an order or decree, whether in law or in equity." *Id.* (quoting *Judicial proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014)). Appellants produced no evidence of a pending "judicial proceeding" at the time of Basiti's and Dyer's text messages or that the communications between Basiti and Dyer were made in connection with any such proceeding. *See Diamond Consortium, Inc. v. Hammervold*, 733 F. App'x 151, 158 (5th Cir. 2018)

–14–

(per curiam) (not designated for publication) (rejecting argument that movant was exercising right to petition under TCPA because "core of movant's actions underlying the civil conspiracy claim simply do no[t] implicate a communication in or pertaining to a judicial proceeding").

Appellants also argue that Dyer's actions, and communications related to those actions, were based on his knowledge of the FBI investigation. Again, the text messages between Basiti and Dyer do not mention the FBI investigation, and Dyer's claimed subjective reasons for allowing Basiti to store appellees' proprietary software and confidential information on Dyer's servers are not "communications" as defined by the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (communication includes "making or submitting" statement or document in any form or medium).

Finally, appellants cite no support for the proposition that a criminal investigation by a law enforcement agency is an "issue under consideration by a judicial or other governmental body" or "is reasonably likely to encourage consideration or review by a judicial or other governmental body." However, even assuming Dyer's actions, and the communications relating to those actions, were "petitioning" activities as defined by the TCPA, appellants failed to establish appellees' claims were based on, related to, or in response to any communications between Dyer and any other person about the FBI investigation or on Dyer's providing appellees' proprietary software and confidential information to the FBI. Rather, the factual bases of appellees' claims are that Dyer conspired with Basiti to misappropriate appellees' proprietary software and confidential business information and use that information for their personal benefit. Appellants, therefore, failed to establish the required nexus between appellees' claims and conduct protected by the TCPA. *See Grant*, 556 S.W.3d at 879; *Porter-Garcia*, 564 S.W.3d at 85.

We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or in response to appellants' exercise of their right to petition as defined by the TCPA.

*Conclusion*

Because appellants failed to satisfy their initial burden of establishing by a preponderance of the evidence that the TCPA applies to appellees' claims, the trial court did not err by denying the motion to dismiss. Based on our resolution of appellants' first issue, we need not address their remaining issues. *See Tervita, LLC*, 482 S.W.3d at 287 (concluding that because appellant failed to meet its burden of showing TCPA applied to appellees' claim, appellate court need not address other prongs of TCPA analysis). We resolve appellants' first and fifth issues against them and affirm the trial court's order denying appellants' motion to dismiss.

/Ken Molberg/
KEN MOLBERG
JUSTICE

180472F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TODD DYER, PHRK INTERVENTION, INC., PHRK INTERVENTION, LLC, AND SOUTHSIDE DEVICE, LLC, Appellants

No. 05-18-00472-CV     V.

MEDOC HEALTH SERVICES, LLC, AND TOTAL RX CARE, LLC, Appellees

On Appeal from the 14th Judicial District Court, Dallas County, Texas, Trial Court Cause No. DC-18-00822. Opinion delivered by Justice Molberg, Justices Whitehill and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's April 24, 2018 order denying appellants Todd Dyer, PHRK Intervention, Inc., PHRK Intervention, LLC, and Southside Device, LLC's motion to dismiss pursuant to the Texas Citizens Participation Act is **AFFIRMED**.

It is **ORDERED** that appellees Medoc Health Services, LLC and Total Rx Care, LLC recover their costs of this appeal from appellants Todd Dyer, PHRK Intervention, Inc., PHRK Intervention, LLC, and Southside Device, LLC.

Judgment entered this 8th day of March, 2019.