**Affirm and Opinion Filed October 19, 2020**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

No. 05-19-01263-CV
_____

**MARK JORDAN, Appellant**
**V.**
**JP BENT TREE, LP, JP ABERDEEN PARTNERS, LP, JP-2400 LAKESIDE, LP, RE CLOSING, LLC, AND JP-LAKESIDE JOINT VENTURE, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-07168**

# MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Molberg

Appellant Mark Jordan appeals the trial court's order denying his Texas

Citizens Participation Act (TCPA)[1] motion to dismiss the claims brought against him

by JP Bent Tree, LP, JP Aberdeen Partners, LP, JP-2400 Lakeside, LP, RE Closing,

LLC, and JP-Lakeside Joint Venture (appellees). We affirm for the reasons below.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. Because the underlying lawsuit was filed before September 1, 2019, the law in effect before September 1, 2019, applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

BACKGROUND

This case involves a dispute arising from activities related to certain limited partnership agreements between appellees (Limited Partners) and JP Bent Tree GP, LLC, JP Aberdeen, LLC, and JP-2400 Lakeside GP, LLC (General Partners). Appellant Jordan served as General Partners' sole manager.

The three partnerships resulting from the limited partnership agreements owned certain partnership properties managed by Sooner National Property Management, LP (Sooner), an entity appellees identify as an affiliate of Jordan. Appellees describe the pertinent relations as follows:

| Partnership | Partnership Property | Prior General Partner | Relevant Limited Partner | Prior Sole Manager |
|---|---|---|---|---|
| Bent Tree Partnership | The Atrium at Bent Tree | Bent Tree GP | RE Closing | Mark Jordan |
| Aberdeen Partnership | The Aberdeen | Aberdeen GP | RE Closing | Mark Jordan |
| Lakeside Partnership | The Greenway II | Lakeside GP | Lakeside JV | Mark Jordan |

Appellees summarize the nature of their lawsuit as follows:

> This is an action to hold Mark Jordan and his affiliated companies liable for their misconduct . . . . For years, Mark Jordan, through the former General Partners he controlled, cheated the Limited Partners out of substantial amounts due them and allowed Mr. Jordan's affiliated company [Sooner] . . . to bilk the Partnerships through excessive and improper charges—all for Mr. Jordan's own financial gain. And despite the overbilling, [Sooner] negligently managed the properties by, for example, not even billing tenants for common area charges for three years. Accordingly, [appellees] bring this action to recover the funds that [Jordan and the other defendants] diverted.

On May 17, 2019, appellees sued Jordan, General Partners, and Sooner for fraud, fraud by nondisclosure, breach of fiduciary duty, and breach of contract. Appellees also sued General Partners and Sooner for gross negligence.

Jordan answered appellees' original petition on June 17, 2019 and filed a TCPA motion to dismiss twelve days later. Appellees filed a TCPA response, and on the day before the TCPA hearing, Jordan filed a reply which included an objection to bifurcated proceedings. In the "objection" portion of that filing, Jordan argued that appellees' response—which focused only on step one of the TCPA analysis and ignored steps two and three—functioned as an improper attempt to bifurcate the proceedings.[2]

The trial court heard the motion on September 18, 2019, and denied it four days later. The order concluded that the TCPA does not apply to appellees' claims.

Jordan timely appealed and argues that the trial court erred (1) in determining the TCPA does not apply and (2) by allegedly bifurcating the hearing on his TCPA motion.

## STANDARD OF REVIEW

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect

---

[2] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)–(d) (describing parties' burdens).

–3–

the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA "protects citizens . . . from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). Section 27.005(b) of the TCPA provides:

> Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association.

TEX. CIV. PRAC. & REM. CODE § 27.005(b). Thus, the TCPA permits a defendant to move for dismissal of a legal action that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *See id*. § 27.003(a).

As a matter of statutory construction, we review de novo a trial court's ruling on a TCPA motion to dismiss. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 833 (Tex. App.—Dallas 2020, pet. denied) (citing *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018)). In conducting that review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based.[3] *Dyer*

---

[3] In deciding a TCPA motion to dismiss, the trial court may consider "'the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.'" *Goldberg*, 594 S.W.3d at 824 (quoting TEX. CIV. PRAC. & REM. CODE § 27.006(a)). "However, the plaintiff's pleadings are usually

*v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

We also ascertain and give effect to the legislature's intent as expressed in the language of the statute, considering the specific statutory language at issue and the TCPA as a whole, and we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Id*. at 424–25.

Our review of a TCPA ruling generally involves three steps. *Creative Oil*, 591 S.W.3d at 132; *Youngkin*, 546 S.W.3d at 679–80; *Goldberg*, 594 S.W.3d at 824; *see* . At step one, the TCPA movant has the burden to show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of association, right of free speech, or the right to petition. *See Creative Oil*, 591 S.W.3d at 132 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(b)); *Youngkin*, 546 S.W.3d at 679; *Goldberg*, 594 S.W.3d at 824.

If the movant does so, the analysis proceeds to step two, where the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim. *See Creative Oil*, 591 S.W.3d at 132 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(c)); *Youngkin*, 546 S.W.3d at 679; *Goldberg*, 594 S.W.3d at 824. A "prima face case" refers to "the 'minimum

'the best and all-sufficient evidence of the nature of the action.'" *Id*. (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Lipsky*, 460 S.W.3d at 590 (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) (orig. proceeding)). "Clear and specific" evidence is "unambiguous," "free from doubt," and "explicit" or "referring to a particular named thing." *Id.* (quoting *KTRK Television v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). Thus, the term "clear and specific" pertains to the quality of evidence required to establish a prima facie case, and the term "prima facie case" pertains to the amount of evidence necessary for a plaintiff to carry his minimal factual burden to support a rational inference establishing each essential element of a claim. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 882 (Tex. App.—Austin 2018, pet. denied).

In *Lipsky*, the Texas Supreme Court explained how this evidentiary standard should be applied, stating, "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91 (internal citations omitted). The TCPA nonmovant may rely on circumstantial evidence that creates an inference establishing a central fact unless the "connection between the fact and the inference is too weak to be of help in deciding the case." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (quoting *Lipsky*, 460 S.W.3d at 589); *see also Lipsky*, 460 S.W.3d at 591 (holding that the TCPA "does not impose a higher burden of proof than that required

–6–

of the plaintiff at trial" and does not "require direct evidence of each essential element of the underlying claim to avoid dismissal").

If the nonmovant satisfies its burden at step two, the analysis proceeds to step three, where the burden of proof shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim, resulting in dismissal under the statute if the movant does so. *Creative Oil*, 591 S.W.3d at 132 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(d)); *Youngkin*, 546 S.W.3d at 679–80; *Goldberg*, 594 S.W.3d at 824.[4]

## ANALYSIS

### *First Issue: TCPA Application*

As the movant, Jordan had the initial burden under the TCPA to show by a preponderance of the evidence that appellees' legal action is based on, related to, or is in response to his exercise of the right of association, right of free speech, or the

---

[4] If a TCPA motion is granted at the third step, one might question whether section 27.005(d) operates as an unconstitutional deprivation of a claimant's right to trial by jury. *See* TEX. CONST. art. V, § 10 (right to have a jury resolve fact questions); *Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *16 n.19 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (mem. op.). In considering whether a valid defense has been established under the third step, at least two of our sister courts have applied a standard of review essentially equivalent to a motion for summary judgment on an affirmative defense. *See Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied) (explaining this and stating, "[I]n order to defeat the [nonmovant's] establishment of a prima facie claim, the [movant] must establish, as a matter of law, each essential element of at least one valid defense as to each of the [nonmovant's] claims."); *Rosales v. Comm'n for Lawyer Discipline*, No. 03-18-00725-CV, 2020 WL 1934815, at *4 (Tex. App.—Austin Apr. 22, 2020, no pet.) (mem. op.) ("The standard of review employed in considering whether a movant established a valid defense so as to be entitled to dismissal is 'essentially equivalent to a motion for summary judgment on an affirmative defense,' meaning we should consider the pleadings and evidence in favor of the nonmovant, taking evidence favorable to the nonmovant as true and indulging reasonable inferences and resolving doubts in favor of the nonmovant.") (quoting *Batra*, 562 S.W.3d at 708).

right to petition. *See Creative Oil*, 591 S.W.3d at 132; *Youngkin*, 546 S.W.3d at 679;

*Goldberg*, 594 S.W.3d at 824; TEX. CIV. PRAC. & REM. CODE § 27.005(b).

### A.     *Jordan's Arguments*

Jordan argues appellees' claims are based on, relate to, or are in response to

the exercise of his right to petition.

As with the exercise of other rights protected by the TCPA, to establish his

initial burden regarding the exercise of his right to petition, Jordan must demonstrate

that he engaged in a "communication," which is defined in the TCPA as "the making

or submitting of a statement or document in any form or medium, including oral,

visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE

§ 27.001(1), (4); *see Dyer*, 573 S.W.3d at 425, 429. The TCPA defines the "exercise

of the right to petition" as including up to thirteen types of different

communications.[5]

---

[5] The TCPA defines "exercise of the right to petition" as:

(A) a communication in or pertaining to:

    (i)    a judicial proceeding;
    (ii)    an official proceeding, other than a judicial proceeding, to administer the law;
    (iii)    an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;
    (iv)    a legislative proceeding, including a proceeding of a legislative committee;
    (v)    a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;
    (vi)    a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;
    (vii)    a proceeding of the governing body of any political subdivision of this state;
    (viii)    a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or
    (ix)    a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

Although Jordan does not identify the precise statutory basis for his argument regarding his alleged exercise of a right to petition, he appears to rely on sections 27.001(4)(A)(i) or 27.001(4)(B) concerning judicial proceedings. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(4)(A)(i), 27.001(4)(B).

In his TCPA motion, Jordan argued that appellees' claims "focus upon allegations and proceedings in [a] [f]ederal criminal proceeding" against him, which Jordan asserts is "based upon . . . or in response to" the following:

1.   Submission of a Development and Economic Development Agreement request (the "DEDA Request") to the City of Richardson that requested reimbursement for construction and infrastructure expenses related to property in Richardson;

2.   Collaborative planning session with, among others, city officials related to rezoning the Richardson property;

3.   Submission of proposed zoning changes and modifications of zoning changes for the property in Richardson to the City of Richardson; and

4.   Presentations to the City of Richardson Plan Commission requesting zoning changes for the Richardson property.

---

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D)   a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E)   any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

TEX. CIV. PRAC. & REM. CODE § 27.001(4).

Appellees' petition does not mention those four acts.

In arguing his position, Jordan relies solely on appellees' petition.[6] Jordan cites various sections of that petition, including the following:

## I. NOTICE OF RELATED CASE

Pursuant to Dallas County Local Rule 1.06, Plaintiffs tender this Notice . . . and inform the Court that [this] lawsuit is so related to the earlier-filed and now disposed of case styled, *JP Bent Tree GP, LLC v. RE Closing, LLC, et al.*, Cause No. DC-18-14634 (consolidated); in the 44th Judicial District Court, Dallas County, that the interests of judicial efficiency and economy will be best served by the filing of the above-captioned lawsuit in the 44th Judicial District Court.[7]

Jordan also cites the entirety of paragraphs twenty-two through twenty-four of appellees' petition and the third bulleted portion of paragraph twenty-five.[8]

---

[6] Jordan did not provide an affidavit or sworn declaration of his own in connection with his TCPA motion. He also did not cite to the other roughly 2,220 pages of materials he submitted with his TCPA motion, which include a declaration from one of Jordan's lawyers and a true & correct copy of the reporters' record from a temporary injunction hearing in an earlier-filed lawsuit against appellees (i.e. the same lawsuit appellees refer to in a paragraph in their petition entitled "Notice of Related Case," which we discuss elsewhere in the opinion).

[7] Soon after appellees' filed their lawsuit, the case was transferred under Local Rule 1.07 to the 44th Judicial District Court.

[8] Paragraphs twenty-two through twenty-five of appellees' petition state:

22. On May 10, 2018, the United States issued a 30-page indictment against Mark Jordan and his wife Laura Jordan (f/k/a Laura Mackza). The indictment charged Mr. Jordan and his wife with, among other things, wire fraud, and bribery. In connection with the indictment, the grand jury found probable cause that, between May 2013 and July 2015, Mr. Jordan conspired with Mrs. Jordan (then mayor of Richardson, Texas) to use her official position to enrich himself and/or his affiliate entities at the public's expense. The indictment included extensive and detailed transaction-level information in support of the charges levied, including but not limited to, evidence that Mr. Jordan: (i) made substantial cash payments to then-Laura Mackza; (ii) caused Sooner to pay for substantial renovations to her home; and (iii) purchased tens of thousands of dollars' worth of furniture and other gifts for then-Laura Mackza.

23. The indictment also included extensive evidence that Mr. Jordan and Ms. Mackza lied to taxing authorities and the City of Richardson, and even made fraudulent filings with the Denton County District Court in an attempt to hide their unlawful conduct. Just as egregious, the indictment further alleges that Mr. Jordan caused Sooner to hire his

*unlicensed* wife as a leasing agent at more than twice the salary paid to the prior *licensed* leasing agent. Again, Sooner is the very firm that formerly provided commercial real estate services to the Partnerships. Even more relevant—though unlicensed—Ms. Mackza was the leasing contact in advertising for the Partnerships. All of this is alleged to have occurred while Mr. Jordan was serving as the manager of the General Partners of the Partnerships.

24. On March 7, 2019, following a nearly month-long trial, Mark and Laura Jordan were found guilty of nearly all counts in the indictment. The court presiding over the Jordans' criminal trial nevertheless granted them a new trial—not because the evidence was insufficient to convict—but based on concerns that a court security officer may have interfered with jury deliberations. The renewed criminal trial is set to commence on July 8, 2019.

25. While investigation of the Defendants' malfeasance continues, to date, it has been uncovered that Defendants engaged in at least the following misconduct:

- Sooner was entitled to a fee and reimbursement from the Partnerships for employees dedicated to Partnership Properties (e.g., building engineers). When Mr. Jordan controlled the former General Partners and Sooner was the property manager, these salaries increased dramatically—i.e., by almost 175%. Although styled as "reimbursements," there is reason to believe that the "reimbursement" amounts far exceed the employees' salaries and that Defendants "pocketed" the rest.

- Through yet another affiliated entity, Mr. Jordan was wrongfully receiving "kickbacks" from utility brokers on certain utility expenses charged to through to the Limited Partners.

- Causing a lawsuit to be filed against the Aberdeen Partnership because of the former General Partner's and/or Sooner's dereliction in failing to assess tenant charges and otherwise miscalculating those charges for three years. Rather than disclose this lawsuit to the Aberdeen Partnership, the former General Partner attempted to settle-out its own dereliction and/or that of its affiliate at the expense of RE Closing by offering several months of free rent, no further operational expenses under the lease, and a multi-year lease extension at below market rates.

- [The wife of Scot Florsheim, Jordan's partner in Sooner and Sooner's asset manager] was "squatting" in space identified as "vacant" on the rent rolls for the Bent Tree Property for over a year. Although Ms. Florsheim claimed to have a lease and to have paid rent for this same time, Bent Tree's financials did not reflect any rent payments for the space or her company and no lease was found in the building's files. The lease was produced in discovery in earlier related litigation and is dated effective October 1, 2018. This self-dealing transaction was undisclosed. Her space also appears to have been constructed at the expense of RE Closing.

- Mr. Jordan—when controlling the former General Partners—also attempted to pass through other unpermitted reimbursements and excessive overhead to the Limited Partners, such as his own life insurance, a computer for his wife, software licenses, stationary, and the cost of Sooner's computer servers.

- Mr. Jordan—when controlling the former General Partners—also, upon information and belief, caused the Aberdeen Partnership to withhold tax credits from tenants at The Aberdeen, which may expose the Aberdeen Partnership (and, therefore, RE Closing) to substantial liabilities.

–11–

Finally, Jordan cites four paragraphs in appellees' petition that incorporate by reference all of the paragraphs that precede their four specific claims against Jordan.[9]

### B.   Appellees' Response

Appellees filed a response in opposition to Jordan's TCPA motion but did not submit any affidavits, declarations, or other information with their response. Appellants argue the TCPA does not apply because their lawsuit involves a business dispute about Jordan's mismanagement of partnerships that run commercial buildings, not any exercise by Jordan of his right to petition.

### C.   Analysis

In reviewing a trial court's decision on a TCPA motion to dismiss, we consider the pleadings in the light most favorable to the nonmovant, *see Dyer,* 573 S.W.3d at 424, and we will not "blindly accept attempts by [a TCPA movant] to characterize [a TCPA nonmovant's] claims as implicating protected expression." *Sloat v. Rathbun,* 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd); *see also Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.).

Jordan argues he satisfied his burden under section 27.005(b) because appellees' petition refers to the parties' prior lawsuit as a related action and includes information about Jordan's federal judicial proceeding.

---

[9] Each of these paragraphs state, "The preceding paragraphs are incorporated by reference as if fully set forth herein."

Jordan ignores a key component required for the exercise of a right to petition, namely, a communication under section 27.001(4). *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4). Contrary to Jordan's argument, a nonmovant's reference to a judicial proceeding in a petition does not necessarily establish that a movant has engaged in any communication constituting an exercise of a right to petition under section 27.001(4) or that the nonmovant's claims are based on such communication.

Based on this record, we conclude Jordan has failed to satisfy his burden under section 27.005(b) because we are simply left to guess about what communications Jordan engaged in, if any, and thus cannot determine that Jordan exercised his right to petition as defined in the TCPA or that appellees' claims are based on, related to, or in response to any such exercise. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Cook v. Kyser*, No. 05-19-00311-CV, 2019 WL 5884429, at *3–4 (Tex. App.—Dallas Nov. 12, 2019, pet. denied) (mem. op.) (concluding movant failed to show TCPA applied because record did not show any protected communications were a factual predicate for nonmovant's claims, which concerned movant's misrepresentations concerning the sale of securities); *Cook v. Simmons*, No. 05-19-00091-CV, 2019 WL 5884426, at *3–4 (Tex. App.—Dallas Nov. 12, 2019, pet. denied) (mem. op.) (same); *Riggs & Ray, P.C. v. State Fair of Texas*, No. 05-17-00973-CV, 2019 WL 4200009, at *4 (Tex. App.—Dallas Sept. 5, 2019, pet. denied) (mem. op.) (reversing order granting TCPA motion regarding right to petition where movant failed to show nonmovant's lawsuit was based on, related to, or in response

to movant's statements or documents regarding a judicial proceeding); *Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at \*5–7 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (mem. op.) (affirming trial court's denial of TCPA motion under similar circumstances); *Dyer*, 573 S.W.3d at 430 (even assuming actions constituted exercise of a right to petition, TCPA did not apply because factual bases of nonmovant's claims involved movant conspiring with another to misappropriate appellees' proprietary software and use that information for personal benefit).

As to the two *Cook* cases, Jordan attempts to distinguish these cases based on differences he perceives between the nonmovant's pleading in those cases and appellees' petition here. However, just as this record reflects, in both *Cook* cases, the record lacked evidence that the nonmovants were involved in the investigation upon which the movant claimed he exercised his protected rights. *See Cook v. Kyser*, 2019 WL 5884429, at \*4; *Cook v. Simmons*, 2019 WL 5884426, at \*4. Here, it is undisputed that the federal judicial proceeding against Jordan did not involve the partnerships in this case.[10] We overrule Jordan's first issue.

---

[10] At the TCPA hearing, the trial court and Jordan's lawyer stated:

> THE COURT: And none of the partnership, partnership properties were involved in the federal lawsuit. Is that correct?
>
> [JORDAN'S COUNSEL]: That is correct.
>
> . . . .
>
> [JORDAN'S COUNSEL]: The whole issue here is, judge, they put in information about an indictment. And, therefore, the TCPA applies by simply them putting the information associated with the indictment into the pleading.

*Second Issue: Alleged Bifurcation Error*

Jordan also asserts the trial court erred by allegedly bifurcating the hearing on his TCPA motion, which he claims erroneously relieved appellees of their obligation to make out a prima facie case on their claims or respond to his affirmative defenses to those claims. It is unclear from the record before us how or whether the trial court actually required the TCPA hearing to proceed in a bifurcated manner, though it is clear that Jordan perceived that it did so and filed objections to bifurcation the day before the hearing.

Even if we assume the trial court bifurcated the hearing—which appears unlikely—we conclude that no error occurred on this record. First, we have already concluded that the trial court did not err in denying Jordan's motion based on the first step of the TCPA analysis because Jordan did not satisfy his section 27.005(b) burden. *See* TEX. CIV. PRAC. & REM. CODE 27.005(b). Because Jordan failed to do so, the trial court was not required to consider whether appellees satisfied any prima facie burden under section 27.005(c) or whether Jordan established any valid defense under section 27.005(d). *See id*. § 27.005(c), (d); *see Youngkin*, 546 S.W.3d at 679–80 (if TCPA movant meets initial burden under section 27.005(b), nonmovant must then establish burden under section 27.005(c), and if this occurs, burden shifts back to the movant to satisfy burden under section 27.005(d)). We overrule Jordan's second issue.

## CONCLUSION

We affirm the trial court's September 22, 2019 order denying Jordan's motion to dismiss appellees' claims.

/Ken Molberg/

KEN MOLBERG

1901263f.p05                    JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK JORDAN, Appellant

No. 05-19-01263-CV          V.

JP BENT TREE, LP,
JP ABERDEEN PARTNERS, LP,
JP-2400 LAKESIDE, LP,
RE CLOSING, LLC, AND
JP-LAKESIDE JOINT VENTURE,
Appellees

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-07168.
Opinion delivered by Justice
Molberg. Justices Carlyle and
Browning participating.

In accordance with this Court's opinion of this date, the trial court's September 22, 2019 order denying appellant's motion to dismiss under the Texas Citizens Participation Act is **AFFIRMED**.

It is **ORDERED** that appellee JP BENT TREE, LP, JP ABERDEEN PARTNERS, LP, JP-2400 LAKESIDE, LP, RE CLOSING, LLC, AND JP-LAKESIDE JOINT VENTURE recover their costs of this appeal from appellant MARK JORDAN.

Judgment entered this 19th day of October, 2020.