**AFFIRMED and Opinion Filed October 29, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00651-CV**

**ANDREW WHITE, Appellant**
**V.**
**NHI-REIT OF AXEL, LLC, Appellee**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07841**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Whitehill

This interlocutory appeal is before us following the denial of a motion to dismiss a business dispute under the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE § 27.001–.011 (TCPA). Andrew White argues that the motion's denial was error because: (i) he established by a preponderance of the evidence that NHI's legal action related to the exercise of his free speech and association rights; (ii) NHI did not establish the prima facie elements of its claims by clear and specific evidence; (iii) NHI's claims are barred by valid defenses; and

(iv) because NHI's claims should be dismissed, the case should be remanded to award White's attorney's fees.

We conclude the motion's denial was not erroneous because the communications at issue, made in the context of a private business dispute, do not involve a matter of public concern or citizen participation and thus do not implicate free speech or association rights under the TCPA. Accordingly, we affirm the trial court's order denying the motion to dismiss.

## I. BACKGROUND

NHI-REIT (NHI) owns three assisted living facilities in Indiana, North Carolina, and Tennessee. In 2015, NHI leased the facilities to SH Regency Leasing, LLC (Regency Leasing) for ten years (the Lease). Regency Leasing then subleased the facilities to three of its subsidiaries (the Subtenants) (Regency Leasing and the Subtenants are collectively referred to as Regency).

In connection with the Lease, NHI and the Subtenants entered into a security agreement (Security Agreement). The Security Agreement was perfected and gave NHI a security interest in all Regency assets, including the proceeds from checks written by facilities' residents (the Collateral).

Andrew White owns or controls East Lake Capital Management, LLC (East Lake), a private equity firm based in Dallas, Texas that specializes in real estate and senior living-related investments. White also owns or controls Regency and ELCM Partners, LLC, East Lake's parent entity and manages these and various other

–2–

entities who perform work for the benefit of East Lake. He also directs East Lake employees, including Chelsea Balestra, Benjamin Lord, David Gawlas, and Wesley Murray.[1]

In 2018, Regency Leasing began to default under various Lease provisions. Regency also stopped invoicing residents and depositing their checks, resulting in the accumulation of checks valued at millions of dollars. Regency also closed its bank accounts and the Regency entities have not held accounts in their own name since that time.

East Lake and Regency Leasing initiated this lawsuit against NHI and its parent company, asserting claims for (i) business disparagement, (ii) defamation, (iii) a declaratory judgment that the Lease had not been breached, and (iv) a temporary injunction.

NHI counterclaimed for breach of the Lease and Security Agreement. The counterclaim was later supplemented and NHI asserted claims and third-party claims against White, Balestra, East Lake, Regency, and others for fraudulent transfer, tortious interference, conspiracy, and aiding and abetting. NHI also filed an emergency motion seeking the appointment of a receiver over Regency Leasing.

According to NHI, after it moved for a receiver, White, Balestra, Lord, Gawlas, and Murray visited one or more of the facilities to collect the uncashed

---

[1] Lord, Gawlas, Murray, and Balestra have dismissed their appeal. Thus, only appellant White remains.

resident checks that had accumulated. White also notified NHI that Regency intended to abandon the facilities. Nonetheless, Balestra and others continued to collect resident checks. The checks were made out to the various Regency entities but were deposited in ELCM's bank account.

White moved to dismiss under the TCPA and subsequently supplemented the motion. NHI responded and objected to the supplement. After a hearing, the trial court denied appellant's motion and supplemental motion (together, the motion to dismiss).

## II. ANALYSIS

### A. Standard of Review and Applicable Law

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them for exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.2.[2] The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. &

---

[2] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. Because this lawsuit was filed before September 1, 2019, the law in effect before September 1 applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

–4–

REM. CODE § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

To accomplish this purpose, the statute provides a procedure to expedite dismissing claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847.

We review the trial court's ruling on a TCPA motion to dismiss de novo. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). "In conducting this review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer*, 573 S.W.3d at 424; *see also* TEX. CIV. PRAC. & REM. CODE § 27.006(a). However, the plaintiff's petition is

generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

**B.      Is NHI's lawsuit predicated on White and Balestra' right to freedom of speech?**

No.  NHI's lawsuit is not predicated on White's freedom of speech because the communications at issue concerned a private business dispute.

For the TCPA to apply, each claim "must be factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of free speech, petition, or association." *See Stroud v. Clearview Energy*, No. 05-18-00729-CV, 2019 WL 1930176, at *6 (Tex. App.—Dallas May 1, 2019, no pet.).  The exercise of the right of free speech is defined as "a communication made in connection with a matter of public concern."  TEX. CIV. PRAC. & REM. CODE § 27.001(3).

Here, NHI's claims are based on the security agreement between NHI and Regency.  The security agreement was to protect NHI in case of default under the Lease.  According to NHI, Regency and the Subtenants were permitted to use the collateral (i.e. the checks) in the ordinary course of business, but that right ceased upon default under the Lease.

NHI also alleged that it demanded that Regency pay all receivables to the landlord and segregate all checks and deliver them to the landlord in the form received with proper endorsements.  But according to NHI, Regency didn't follow the security agreement and misused, commingled, and fraudulently transferred the checks from residents.  Specifically, NHI pleads that:

–6–

- In early 2018, White or others instructed employees at the [Regency] facilities not to deposit checks received from residents. Due to these instructions, more than $2 million in resident checks accumulated at the [Regency] Facilities and were held by the executive directors and/or other employees at the [Regency] Facilities;

- Because of the uncashed checks . . . the bank accounts of the elderly residents who provided these checks remained unchanged" and upon information and belief, several residents lost their insurance benefits or government benefits after their outstanding balances . . . exceeded the applicable income/asset thresholds;

- After receiving the Security Notice, Regency and its Subtenants did not instruct the residents to pay Landlord and instead . . . sent invoices to residents demanding additional payments and began collecting additional checks from the residents for November and December 2018 payments;

- [East Lake and others] then began cashing these checks and the checks that had been previously provided, but uncashed, since February 2018;

- Resident checks were deposited or transferred to bank accounts held or controlled by East Lake and/or White rather than those for the use and benefit of Regency and the Subtenants;

- [East Lake, White and Balestra, and others] conspired and aided and abetted in the purported misuse of the checks.

These allegations form the basis for NHI's counterclaims for breach of the security agreement, fraudulent transfer, tortious interference with existing contracts, and aiding and abetting.

White's motion to dismiss argued that the TCPA applies to the foregoing claims, and identified the following as communications implicating free speech under the TCPA: (i) depositing residents' checks or transferring the checks to bank

accounts after deposit; (ii) instructing employees not to deposit residents' checks; (iii) sending invoices to residents demanding additional payments; and (iv) conspiring with each other in performing the above acts and in the course of operating their facilities.

The parties dispute whether the foregoing are TCPA defined "communications."[3] But even assuming they are, they were not made in connection with a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(3); *Creative Oil*, 591 S.W.3d at 135.

"'Matters of public concern' include issues related to: (i) health or safety; (ii) environmental, economic, or community well-being; (iii) the government; (iv) a public official or public figure; or (v) a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7).

Thus, the phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Creative Oil*, 591 S.W.3d at 135. Consequently, to be entitled to protection, the communication itself must address a subject of legitimate news interest; that is a subject of general interest and of value and concern to the public. *Erdner v. Highland Park Emergency Ctr.*, 580 S.W.3d 269, 276 (Tex. App.—Dallas

---

[3] A TCPA "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1).

2019, pet. denied) (mem. op.) (communication must relate to matter of public concern).

Communications about the economic well-being of private parties, however, are not matters of public concern. To be covered by the TCPA, communications must involve environmental, health, or safety concerns that have public relevance beyond the pecuniary interests of the private parties involved. *Creative Oil*, 591 S.W.3d at 136; *id.* at 137 ("A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words.").

Accordingly, private business dispute communications do not involve matters of public concern where they only address private economic interests. *See Pingua Lei v. Nat. Polymer Int'l Corp.*, No. 05-18-01041-CV, 2019 WL 2559756, at *6 (Tex. App.—Dallas June 21, 2019, no pet.) (mem. op.); *see also*, *Erdner*, 2019 WL at *5 (communications about forming a freestanding emergency room business and possible scope of its future activities were not exercise of free speech simply because communications could result in healthcare services being offered to the public at some point in the future); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *5 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (statements about a business dispute involving physicians' agreement were not in connection to an issue related to health and safety or community well-being such that they were "matter of public concern"); *Dyer*, 573 S.W.3d at 428

(communications discussing misappropriating proprietary software and other confidential information were not tangentially related to a matter of public concern simply because the information belonged to a healthcare company).

White urges that the communications implicate matters of public concern because they were "made in the context of the operations and services" White provided at the facilities, and thus were made "in connection with a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7). But, "[t]he words 'good, product, or service in the marketplace'. . . do not paradoxically enlarge the concept of matters of public concern' to include matters of purely private concern." *See Thomas v. BioTE Medical, LLC*, No. 05-19-00163-CV, 2020 WL 948087, at *2 (Tex. App.—Dallas Feb. 26, 2020, no pet.). "[T]he 'in the marketplace' modifier suggests that the communication must have some relevance to a public audience of potential buyers or sellers." *Id*. (citing *Creative Oil*, 591 S.W.3d at 134).

White further argues that the communications also concern "health or safety" and "economic and community well-being" because they relate to care and assistance provided to facilities' residents and to residents that NHI claims lost insurance or governmental benefits because White failed to deposit the checks. These arguments are similarly unpersuasive.

Depositing checks, sending invoices, and internal billing directives do not implicate a matter of public concern. The public has no discernable interest in a private business's receivables.

Likewise, the parties' rights and performance under a security agreement are of no political, social, or other consequence to the community. *See Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (matters of public concern involve subjects of general interest and value to the public).

And there is nothing to demonstrate that the communications about the facilities' internal business operations are related to services the facilities provided to the residents. *See Staff Care*, 2019 WL 212116, at *5–6; *see also Creative Oil*, 591 S.W.3d at 136.

Moreover, White's involvement in the healthcare business does not render every communication in the operation of that business a matter of public concern. *See Staff Care*, 2019 WL 2121116, at *5 (statements about a business dispute involving physicians not a matter of public concern).

As we said in *Dyer*:

> We cannot conclude communication discussing allegedly tortious conduct are tangentially related to a matter of public concern simply because proprietary and confidential information that was to be appropriated belong to a company in the healthcare industry or because the alleged tortfeasors hoped to profit from their conduct.

*Dyer,* 573 S.W.3d at 428.

Viewing the pleadings and evidence in the light most favorable to the non-movant, as we must, we cannot conclude the communications were made in connection with a "matter of public concern."

Accordingly, we conclude White did not establish by a preponderance of the evidence that NHI's claims are based on, related to, or in response to appellant's exercise of a right of free speech as defined by the TCPA.

## C.  Is NHI's lawsuit predicated on White's TCPA defined right to association?

NHI's lawsuit is not predicated on White's right to association because there is no public or citizen participation.

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  TEX. CIV. PRAC. & REM. CODE § 27.001(2).  To be an exercise of the right of association under the TCPA, the nature of the communication between individuals who join together must involve public or citizen participation. *Erdner*, 580 S.W.3d at 275.

Here, White  has not shown that the communications involved any public or citizen participation.  In this instance, there is nothing to suggest public or citizen participation in White's internal business affairs or in this purely private dispute.  Under these circumstances, construing the TCPA to find a right of association simply because there are communications between parties with a shared interest in a private business transaction does not further the TCPA's purpose to curb strategic

–12–

lawsuits against public participation. *See BusPatrol Am., LLC v. Am. Traffic Sols., Inc.,* No. 05-18-00920-CV, 2020 WL 1430357, at *8 (Tex. App.—Dallas Mar. 24, 2020, pet. filed) (mem. op.).

Accordingly, we conclude that White did not establish by a preponderance of the evidence that NHI's claims are based on, related to, or in response to White's exercise of a right of association as defined by the TCPA.

### III. CONCLUSION

Having resolved White's first issue against him obviates the need to consider his remaining issues. *See* TEX. R. APP. P. 47.1. Accordingly, we affirm the trial court's order denying the motion to dismiss.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

190651F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANDREW WHITE, Appellant

No. 05-19-00651-CV     V.

NHI-REIT OF AXEL, LLC,
Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-07841.
Opinion delivered by Justice
Whitehill. Justices Pedersen, III and
Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee NHI-REIT OF AXEL, LLC recover its costs of this appeal from appellant ANDREW WHITE.

Judgment entered October 29, 2020