**Affirmed and Opinion Filed December 9, 2020**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00462-CV

**DON HARRIS, CHARLES SHAW, MICHAEL K. WILSON, ROBERT LUNA AND JAMES FRANK HANSEN, Appellants**

**V.**

**TERRY KNUTSON, INDIVIDUALLY AND AS ASSIGNEE, DONAL BARRY, INDIVIDUALLY AND AS ASSIGNEE, WIRELESS POWER, LLC, AND TEXZON TECHNOLOGIES, LLC N/K/A VIZIV TECHNOLOGIES, LLC, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16333**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Partida-Kipness
Opinion by Chief Justice Burns[1]

Don Harris, Charles Shaw, Michael K. Wilson, Robert Luna, and James Frank

Hansen appeal the trial court's order denying their motion to dismiss filed under the

Texas Citizens' Participation Act (TCPA). In four issues, appellants argue the trial

court erred in denying their individual motions to dismiss because the TCPA applies

---

[1] The Honorable David Bridges, Justice, participated in the submission of this case; however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. Chief Justice Burns has reviewed the record and the briefs in this cause.

to the claims brought by appellees, the commercial speech exception under the TCPA does not apply to appellees' claims, and appellees failed to meet their burden of producing clear and specific evidence of every element of their claims. In addition, appellants argue the trial court erred in not sustaining their objections to certain evidence. We affirm the trial court's order denying appellants' motions to dismiss.

In October 2018, appellees filed their original petition alleging that, in October 2014, appellants had a third-party attorney set up Wireless Power, a company that appellants presented to appellees and other investors as "a ground-breaking and revolutionary opportunity to harness electricity and to distribute it wirelessly to all parts of the globe." Appellants represented that Wireless Power had already laid the groundwork for the transmission of electricity services with various types of relationships and agreements with other entities or partners.

On January 19, 2016, Harris, Shaw, and Wilson met with Terry Knutson and told him that investments in WP would be used to purchase ownership interests in three other entities: Tesla Energy, LLC ("Tesla"), Texanova Energy, Inc. ("Texanova"), and Texzon Technologies, Inc. ("Texzon"). Texzon owns and operates the technology and other equipment for the wireless transmission of electricity services. Appellants described Tesla as a marketing company which would help promote and facilitate business ventures involving Texzon's electricity transmission capabilities and would eventually be supplanted by Zenneck Power

Company. Defendants described Texanova as a company having expertise in acquiring electricity from various sources to be transmitted using Texzon's technology. The petition alleged that, at the time of these representations, each of the appellants knew these descriptions were false or misleading and designed to obtain large investments under false pretenses.

Harris, Shaw, Wilson, and Luna repeatedly told appellees and other investors that Wireless Power was the exclusive vehicle to invest in this wireless electricity technology, and the only way for investors to participate in the opportunity was by purchasing stock in Tesla, Texanova, and Texzon through Wireless Power. From at least January 2015, Harris, Shaw, Wilson, and Luna offered and sold securities in the form of membership units in Wireless Power, representing that investors would profit from the company's anticipated business of providing wireless electricity services across the globe through the investments in Tesla, Texanova, and Texzon. Appellants and a co-conspirator promoted and marketed the membership units via a private placement memorandum (the "PPM"), together with an Investor Book and miscellaneous documents wherein they represented that they planned to raise up to $79,000,000 from investors to purchase these units. By 2016, appellants had raised over $13 million from approximately 85 Wireless Power investors in various U.S. states and foreign countries, including appellees.

Appellees' petition alleged the PPM contained misrepresentations and omissions concerning appellants' backgrounds, their affiliated entities, and the

management and business of Wireless Power. Specifically, appellees alleged that appellants "had knowledge of and deliberately or recklessly misrepresented" the following:

> Tesla had a Master Distribution Agreement with Texzon and was the sole licensed Master Distributor for Texzon of the electro-magnetic wave technologies;
>
> Tesla would be the only vehicle available to the public for investment in "this new technology"; and
>
> Tesla was to (or had) become Zenneck Power and an existing Tesla/Texzon Agency Agreement was to be transferred to Zenneck, which had legitimate management.

Appellees alleged that, in reality, Tesla was not a "Master Distributor" for Texzon, nor was it the exclusive investment vehicle for Texzon units. Instead, an associate of appellants, Rick Randall, owned and/or controlled Tesla, which he would ultimately use for his own personal benefit. Similarly, Tesla had not and would not transform into Zenneck Power; thus, the Texzon Agency Agreement was not transferred to Zenneck. Nevertheless, as late as September 2016, Shaw and Luna continued to assure investors that Tesla would become Zenneck Power and thus become a legitimate operating company.

Appellees' petition alleged that, throughout 2016, Harris falsely represented Texanova (1) was able to acquire and aggregate for resale electricity from providers around the world, (2) owned technology to transport electricity, (3) had a joint venture agreement with Hover Energy to purchase renewable energy, and (4) had an equity purchase agreement with an actual operating company. While these

representations were being made, Shaw, Luna, and Wilson were aware that Texanova was actually a failed water project company completely unable to perform any of the activities Harris claimed. Appellees alleged Texanova was a corporate "shell" with "no employees, no business plan, no organization chart, no assets, and no agreements with any power providers anywhere." Similarly, Wireless Power was "a shell company established by [appellants] to receive and forward investor funds and own interests in a legitimate company (Texzon) and illegitimate companies (Tesla and Texanova)."

Regarding the disposition of investor funds, appellees alleged appellants, along with Randall, who also owned or was affiliated with Holmes Financial, LLC, transferred the following funds: $13,719,500 directly to Holmes Financial; $400,000 to Kilowind, LLC, a company controlled by Harris; $150,000 to Luna as a bonus for vague and unidentified "services rendered"; $651,658 to Shaw, who in turn transferred $19,200 to Luna Energy Company (owned by Luna) for introducing investors to Wireless Power; $1,013,874 directly to Harris, who transferred approximately $740,340 to Wilson; and $175,000 directly to Hansen for undisclosed and unknown reasons.

Appellees alleged Harris, Shaw, Wilson, and Luna were "simply engaged in a practice and course of business of misusing investor proceeds for their own purposes and benefits, including taking commissions, covering non-[Wireless Power] expenses, and generally siphoning funds from Wireless Power." By October

2016, appellees began to aggressively question the disappearance of their investments. Appellees alleged that, at a meeting on or about October 21, 2016, appellants and Randall produced a chart that was designed to lull investors, but had the opposite effect. The chart actually showed that, of the first $9.41 million invested in Wireless Power, only $3.559 million actually reached Texzon. Later, Harris provided evidence that showed millions of investor funds flowing to Tesla, Texanova, Harris, Shaw, Wilson, and Luna. Appellees further alleged that appellants failed to register as brokers under federal and state securities laws.

Based on these factual allegations, appellees asserted various claims under the Texas Securities Act; a claim for conspiracy to defraud against all appellants; a fraud claim against Harris, Shaw, Wilson, and Luna; and additional claims seeking exemplary damages and asserting that all appellants' liability should be joint and several.

In January 2019, appellants filed individual motions to dismiss pursuant to the TCPA. The motions alleged appellees' claims asserted appellants "worked together through various entities to pursue collectively the common interest of obtaining and selling membership units in Wireless Power." Appellants argued appellees' factual pleadings placed their claims squarely within the "right of association," and legal actions implicating the right of association within a group or organization meet the first step of the TCPA. Accordingly, appellants argued, under step two of the TCPA, the burden shifted to appellees to establish a prima facie case for each essential

element of the claim in question through clear and specific evidence. Appellants argued appellees could not establish all elements of their claims. Therefore, appellants argued, all of appellees claims should be dismissed. On March 29, 2019, the trial court signed an order denying appellants' motions to dismiss, and this appeal followed.

In their first issue, appellants argue the trial court erred in denying their individual motions to dismiss because the TCPA, as it existed at the time this action was filed, applied to the claims brought by appellees "pursuant to the free right of association and freedom of speech provisions" of the TCPA. Appellants assert (1) the right to freely associate provision of the TCPA applies because appellees' claims "are based upon or arise out of or in connection with alleged communications of interest to the public or at least a group, only a small number of who are plaintiffs in the case below, and which involved public or citizen participation" and (2) the right of free speech provision of the TCPA applies because appellees' claims are "based upon oral communications allegedly made by Appellants on a matter of public interest or concern."

In a separate brief, Hansen asserts that his communication with Wireless Power representative Harris constituted an exercise or use of free speech that was "a communication made in connection with a matter of public concern" under the TCPA. Specifically, Hansen argues the trial court erred in "refusing to accept that communications between Appellants Harris and Hansen, regarding capitalization of

a joint venture intended to utilize wireless power technology to generate electricity domestically that could be broadcast into an underdeveloped (yet friendly) country such as Ghana, was not at least *tangentially* related to a matter of 'public concern.'"

Also in a separate brief, Luna adopts in full and incorporates by reference the opening brief filed by Harris on behalf of all appellants. Luna notes that he did not move for dismissal under the theory of a right to free speech. Instead, Luna argues appellees' "retaliatory claims and supporting affidavits unquestionably relate to or are based on Appellants' protected right of association—indeed, Appellees specifically state that they filed their claims because Luna is allegedly communicating with others to collectively pursue the common purpose of getting people to invest in Wireless Power, the purpose of which Appellees have admitted involves a matter of 'common interest' or public concern."

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them for exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.[2] The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition,

---

[2]The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. Because this lawsuit was filed before September 1, 2019, the law in effect before September 1 applies. See Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

To accomplish this purpose, the statute provides a procedure to expedite dismissing claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847.

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). "In conducting this review, we consider, in the light most

favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer*, 573 S.W.3d at 424; *see also* TEX. CIV. PRAC. & REM. CODE § 27.006(a). However, the plaintiff's petition is generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A matter of public concern includes, among other things, "an issue related to . . . health or safety," or "environmental, economic, or community well-being." *Id.* § 27.001(7).

The communications referenced in appellees' petition[3] involved "fraud, conspiracy to defraud, and other wrongdoing committed by [appellants] in connection with the offer and sale of securities in Wireless Power . . . a company promoted by [appellants] as developing and investing in the technology to provide wireless electricity services across the globe."

The TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2); *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 275

---

[3] Whether a legal action is based on, related to, or in response to the exercise of a protected right is determined based on the claims made in the non-movant's petition. *Hersh*, 526 S.W.3d at 467.

(Tex. App.—Dallas 2019, pet. denied). To constitute an exercise of the right of association under the TCPA, the nature of the "communication between individuals who join together" must involve public or citizens' participation. *Dyer*, 573 S.W.3d at 426; *Erdner*, 580 S.W.3d at 275. Because the communications at issue here were private communications related to an alleged fraud and conspiracy to defraud against appellees and did not involve public or citizens' participation, it would be "illogical" to apply the TCPA to those communications. *Dyer*, 573 S.W.3d at 426. Further, construing the statute such that appellants would have a "right of association" based solely on appellants' private communications allegedly pertaining to the fraud and conspiracy to defraud is an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation. *Id.* at 426–27. We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or in response to appellants' exercise of a right of association as defined by the TCPA.

Appellants next adopt Hansen's argument that communications between Harris and Hansen regarding capitalization of a joint venture intended to use wireless power technology to generate electricity domestically and broadcast it into an underdeveloped country such as Ghana was at least tangentially related to a matter of "public concern."

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. TEX. CIV.

–11–

PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government, a public official, or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech under the TCPA. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

A communication cannot have a "tangential relationship" to a matter of public concern that does not yet exist. *Erdner*, 580 S.W.3d at 277. Appellees' claims here alleged Texanova was a corporate "shell" with "no employees, no business plan, no organization chart, no assets, and no agreements with any power providers anywhere." Similarly, Wireless Power was "a shell company established by [appellants] to receive and forward investor funds and own interests in a legitimate company (Texzon) and illegitimate companies (Tesla and Texanova)." As appellees point out, "[t]here is no wireless electricity available anywhere." The fact that the communications at issue here could possibly result in some kind of electrical service being offered to the public at some location at some point in the future is not enough to bring them within the scope of the TCPA. *Id.*

We conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or in response to appellants' exercise of their right of free speech as defined by the TCPA. We overrule the first issue

–12–

raised by appellants collectively and Hansen and Luna individually.  Because of our disposition of this issue, we need not address appellants' remaining issues.

We affirm the trial court's order denying appellants' motions to dismiss.


/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190462F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DON HARRIS, CHARLES SHAW,
MICHAEL K. WILSON, ROBERT
LUNA AND JAMES FRANK
HANSEN, Appellants

No. 05-19-00462-CV       V.

TERRY KNUTSON,
INDIVIDUALLY, AND AS
ASSIGNEE, DONAL BARRY,
INDIVIDUALLY, AND AS
ASSIGNEE, AND WIRELESS
POWER, LLC., TEXZON
TECHNOLOGIES, LLC N/K/A
VIZIV TECHNOLOGIES, LLC,
Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-16333.
Opinion delivered by Chief Justice
Burns. Justices Molberg and Partida-
Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees TERRY KNUTSON, INDIVIDUALLY, AND AS ASSIGNEE, DONAL BARRY, INDIVIDUALLY, AND AS ASSIGNEE, AND WIRELESS POWER, LLC., TEXZON TECHNOLOGIES, LLC N/K/A VIZIV TECHNOLOGIES, LLC recover their costs of this appeal from appellants DON HARRIS, CHARLES SHAW, MICHAEL K. WILSON, ROBERT LUNA AND JAMES FRANK HANSEN.

Judgment entered this 9th day of December, 2020.