**Affirmed and Opinion Filed August 24, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-01097-CV

**TROY GOOD, STAN STARNES, AND NOBILIS GROUP, INC., Appellants**
**V.**
**ACCELA CAPITAL SERVICES, INC., DERIVATIVELY ON BEHALF OF DENT ZONE, INC., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-12092**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellants contend the trial court erred in denying their motion to dismiss under the Texas Citizens Participation Act (TCPA). Appellee brought a shareholder derivative action against appellants alleging breach of fiduciary duties arising from alleged self-dealing by officers of Dent Zone, Inc. Appellants moved to dismiss the claims by asserting that the transactions were protected under the TCPA as an exercise of the right of association. The trial court denied the motion. We affirm the trial court's order.

## BACKGROUND

The entity at the center of this case, Dent Zone, Inc., was formed as a closely held Texas corporation in 2007. Dent Zone provides paintless automotive dent repair and operates as a "property and casualty" or "service agreement" company in multiple states. Shortly after Dent Zone was incorporated, appellee Accela Capital Services, Inc. (Accela) became the controlling shareholder and appointed its director and president Tom Keffer as board chair. Keffer was removed from the board in 2015 and replaced by another Accela director, Ann Jensvold, and Troy Good and Greg Hultgren. The new board appointed Good as CEO, Hultgren as CFO, Jensvold as CIO, and Stan Starnes as COO. Jensvold was removed as CIO later in 2015 and removed from the board in 2016. Starnes replaced Jensvold on the board. Hultgren died in 2016, leaving Good and Starnes as the only Dent Zone directors.

As the basis for its lawsuit, Accela identifies a number of actions taken by Good and Starnes that allegedly breached their fiduciary duties while they controlled the Dent Zone board.[1] These actions begin with the formation of Dent Zone's Florida subsidiary DZAF, Inc. Keffer and Good formed DZAF in 2013 to address a regulatory concern in Florida. According to the parties, Florida law prevented Dent Zone from operating in Florida as a Motor Vehicle Service Agreement Company without providing certain disclosures. To avoid this requirement, Keffer and Good

---

[1] We do not recite all of the events Accela alleges as the basis for its lawsuit but only certain events to provide context for our analysis. Furthermore, our recitation of facts and our characterization of the record is not meant to express any opinion on the merits of any claim or defense in this case.

formed DZAF to administer service contracts in Florida. DZAF paid a $500,000 bond to obtain regulatory approval as a "service agreement company." The parties disagree on the facts surrounding the funding of this bond and ownership of DZAF. According to appellants, Keffer and Good each executed a $250,000 promissory note to Dent Zone to fund the bond. Accela contends, however, that Dent Zone loaned Good the money for the bond and later canceled the debt. Appellants also contend that Keffer and Good each owned 50% of DZAF's stock. Accela does not contest the initial stock distribution but contends that Keffer and Good were merely "nominal" owners of a shell company because Dent Zone provided all of the personnel to DZAF for the work it allegedly performed and stripped all profit from DZAF.

By 2016, all of Keffer's DZAF stock had been transferred to Good. Good then exchanged his DZAF shares for Dent Zone shares, thus making Dent Zone the sole owner of DZAF. According to appellants, Florida insurance regulations required Dent Zone, as DZAF's owner, to report background information on all shareholders with at least a 10% interest in the company. Accela was one such shareholder. To reduce Accela's interest and avoid the reporting requirement, Accela sold 500,000 shares of Dent Zone stock to Good, and Dent Zone issued 500,000 "restricted" shares to other shareholders. The Florida Office of Insurance Regulation approved Dent Zone's ownership of DZAF.

The "restricted" shares were subject to forfeiture on January 5, 2019, and forfeiture would leave Accela again owning more than 10% of Dent Zone and subject to the reporting requirement. As the forfeiture date approached, Accela did not provide the required background information, and Dent Zone issued additional "restricted" shares to maintain Accela's diluted interest. When the new "restricted" shares expired a short time later, Accela still had not provided the required background information. To maintain regulatory compliance, the board reversed Dent Zone's purchase of DZAF by transferring all DZAF stock back to Good. The Florida Office of Insurance Regulation approved of the ownership change. Although appellants contend these transactions were necessary to meet Florida's insurance regulations, Accela contends they were unnecessary and served only to transfer ownership of DZAF back to Good, who did nothing to return it to Dent Zone.

Also in 2016, Starnes formed Nobilis Group, Inc. with the Good Family Living Trust and two other investors. Each investor contributed their Dent Zone stock to Nobilis, thus making Nobilis the owner of approximately 80% of Dent Zone's stock. According to appellants, Nobilis provides "administration services" in states where Dent Zone could not, due to "contractual liability insurance policy" restrictions. Accela contends that appellants enriched Nobilis at Dent Zone's expense. Specifically, Accela contends appellants moved Dent Zone employees to Nobilis and required Dent Zone to lease them back at a higher rate; extended Nobilis an $8 million line of credit with below-market terms and an unreasonable $15,000

–4–

cap on attorney's fees; and transferred Dent Zone's assets to Nobilis for inadequate consideration. Appellants contend, however, that Dent Zone outsourced its employees to Nobilis to reduce Dent Zone's expenses and employee liabilities; the line of credit is current and not in default; and the transferred assets were underperforming for Dent Zone.

Accela also contends that appellants used money loaned by Dent Zone to buy additional stock from Dent Zone shareholders and further consolidate their ownership of Dent Zone through Nobilis. According to Accela, these loans contained unreasonable terms, such as extended payment schedules and below-market interest rates, and the stock purchases usurped Dent Zone's opportunity to repurchase its stock. In one such transaction, Accela alleges that Dent Zone bought shares from Hultgren for $2,600,000, paying $1,000,000 in cash and issuing a note for the remainder. Accela alleges that Dent Zone then assigned the stock to Good in exchange for a promissory note under which Good would pay $400,000 per year for six and a half years. Appellants contend, however, the purchases were made to dilute Accela's interest in Dent Zone and keep Dent Zone and DZAF compliant with state insurance reporting requirements. Moreover, appellants contend the board approved the promissory notes.

Based on these, and other events, Accela filed its original petition asserting that Good and Starnes had breached their fiduciary duties to Dent Zone through improper self-dealing and abuse of Dent Zone and its shareholders. Accela further

alleged that Good and Starnes unjustly enriched themselves at Dent Zone's expense. Accela also asserted that Nobilis conspired with Good and Starnes in their fiduciary breaches. Appellants answered and filed a motion to dismiss the claims under the TCPA. According to appellants' motion, Accela's claims are based on or in response to the exercise of appellants' right of association. Accela filed a reply and amended petition seven days before the hearing on appellants' motion. The trial court heard and denied the motion, and this appeal followed.

## STANDARD OF REVIEW

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).[2] Its stated purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

As a matter of statutory construction, we review de novo a trial court's ruling on a TCPA motion to dismiss. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*,

---

[2] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law. Serv. 684, 687. This lawsuit was filed on August 28, 2020. Thus, the current version of the law with 2019 amendments applies to this action. All citations to the TCPA are to the current version unless otherwise indicated.

591 S.W.3d 127, 132 (Tex. 2019); *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 827 (Tex. App.—Dallas 2020, pet. denied) (op. on reh'g) (citing *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018)). In conducting that review, we consider, in the light most favorable to the nonmovant, the pleadings, evidence a court could consider under civil procedure rule 166a, and any supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied) (citing, in part, the prior version of § 27.006(a)).

We also ascertain and give effect to the legislature's intent as expressed in the language of the statute, considering the specific statutory language at issue and the TCPA as a whole, and we construe the statute's words "according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)); *see Dyer*, 573 S.W.3d at 424–25.

We may not judicially amend the TCPA by adding words that are not contained in the statute's language. *In re Panchakarla*, 602 S.W.3d 536, 540–41 (Tex. 2020). We also will not "blindly accept attempts by [a TCPA movant] to characterize [a TCPA nonmovant's] claims as implicating protected expression" but will "view the pleadings in the light most favorable to [the nonmovant]; i.e., favoring

–7–

the conclusion that [its] claims are not predicated on protected expression." *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd); *see also Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.) (same).

## ANALYSIS

In four issues, appellants contend the trial court erred in denying their motion to dismiss because (1) Accela's legal claims are based on or in response to the exercise of their right of association; (2) Accela failed to prove a TCPA exemption applies to its claims; (3) Accela failed to prove a prima facie case by clear and convincing evidence; and (4) appellants established one or more affirmative defenses to Accela's claims.

Our review of a TCPA ruling generally involves three steps. First, the TCPA movant has the burden to demonstrate the legal action is based on or is in response to its exercise of the right of association, right of free speech, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(b)). If the movant does so, the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(c)). If the nonmovant satisfies its burden at step two, the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which it is entitled to

judgment as a matter of law. TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(d)).

As the movants, appellants were required to demonstrate that Accela's legal action was based on or in response to appellants' exercise of the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). The exercise of the right of association is the joining together "to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id*. § 27.001(2). Appellants contend that their exercise of the right of association related to a matter of public concern, specifically that it involved "a subject of concern to the public." *See id*. § 27.001(7)(C).[3]

Appellants assert that they met the burden to demonstrate that the TCPA applied by showing that the acts in question were taken to ensure Dent Zone's compliance with Florida insurance laws. Appellants explain that the transactions at issue were meant only to dilute Accela's interest in Dent Zone and ensure compliance with Florida insurance regulations. According to appellants, these efforts taken to ensure regulatory compliance constituted an exercise of their right of association because Florida law considers the "source and amount of funds or other consideration" used in acquiring an interest in a regulated company a matter

---

[3] A matter of public concern is "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." TEX. CIV. PRAC. & REM. CODE § 27.001(7).

of public concern. Accela asserts, however, that its claims are not based on actions taken to ensure compliance with Florida law, but appellants' alleged self-dealing business transactions, which involved only the "internal affairs of a closely-held corporation." We agree with Accela.

According to appellants, their attempt to dilute Accela's interest in Dent Zone to remain compliant with Florida law is a subject of public concern. Appellants repeatedly conclude in their brief on appeal that information concerning 10% shareholders is of public concern because Florida law requires reporting such information for obtaining a license as a "service agreement company." Even assuming, without deciding, that Florida law requires such reporting, appellants have cited no authority establishing that actions taken to *avoid* such reporting would be a matter of public concern.

Additionally, for a claim to be based on or in response to an allegedly protected act, the claim must rely on the act itself. *See Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) ("By relying on the language used in the [plaintiffs'] pleadings, [defendant] showed that the [plaintiffs'] action is based on her alleged exercise of free speech and thus covered by the Act."); *CVK Enters., L.L.C. v. Pullen*, No. 13-20-00047-CV, 2020 WL 6602153, at *5 (Tex. App.—Corpus Christi-Edinburg Nov. 12, 2020, no pet.) (mem. op.) (concluding plaintiff's claim for breach of real property covenant prohibiting multi-family development was in response to defendant's application for multi-family rezoning); *River Plantation Cmty. Improvement Ass'n*

*v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *4 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.) (allegation that a party tortiously interfered with a contract by filing a declaratory judgment action stated a claim "in response to" the party's exercise of the right to petition). Assuming, without deciding, that Dent Zone's ownership reporting to Florida regulatory authorities—as demonstrated by regulatory consent decrees cited and offered into evidence by appellants—constituted a matter of public concern, there is no indication that Accela's claims are based on or in response to that reporting. Rather, Accela complains that appellants "unjustly enriched themselves at the expense of Dent Zone" by "improper self-dealing" and "abuse of Dent Zone (and its shareholders)." Indeed, Accela makes no mention of Dent Zone's regulatory filings in its original petition. Moreover, appellants have cited no authority establishing that merely operating a company within regulatory bounds insulates its officers under the TCPA from a shareholder derivative action, and we are not aware of any such authority.

The court in *Martin v. Hutchison*, however, did address a motion to dismiss a shareholder derivative action under the TCPA on facts similar to those at issue here. *See Martin v. Hutchison*, No. 06-19-00093-CV, 2020 WL 6788243, at *3 (Tex. App.—Texarkana Nov. 19, 2020, pet. denied) (mem. op.).[4] *Martin* concerned a

---

[4] Although *Martin* applied the prior version of the TCPA, the court analyzed both the prior and current versions in reaching its conclusion. *Id.*, at *10–15. Thus, we find its holding helpful to our analysis.

dispute among shareholders of a closely held, Texas telecommunications company. *Id.*, at \*1–2. The dispute between groups of majority and minority shareholders concerned asset transfers and an executive bonus payment. *Id.*, at \*2–3. The minority shareholders sued the majority shareholders for civil theft, conversion, breach of fiduciary duty, fraud, and money had and received. *Id.*, at \*3. The majority shareholders moved to dismiss the claims under the TCPA, contending the claims involved the exercise of their rights of free speech and association. *Id.* According to the majority shareholders, the communications at issue concerned public matters of economic well-being and provision of telecommunication services. *Id.* The trial court agreed that the TCPA applied and concluded the minority shareholders failed to make a prima facie case, thus the trial court dismissed the claims. *Id.*, at \*4.

The appellate court, however, determined that the TCPA did not apply to the minority shareholders' claims. *Id.*, at \*15. The court noted the ambiguous scope of the prior version of the TCPA, which defined the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."[5] *Id.*, at \*10–11. Because both the prior and current versions of the TCPA include the term "common interests" in the definition, the court analyzed both versions of the TCPA to determine the right's proper scope. *Id.*, at 13–15. After determining that the term referred to "a community

---

[5] *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 961, 961.

at large: public," the *Martin* court concluded that the communications at issue were not protected unless they related to the "common interests of a community or public at large." *Id*., at *15. Because the minority shareholders' claims arose from communications regarding the transfer of company assets and an executive bonus payment, they concerned "private financial or private business interests" and were not matters of public concern. *Id*., at *15. Accordingly, the court reversed the trial court's judgment dismissing the minority shareholders' claims and remanded the case. *Id*.

Like the minority shareholders in *Martin*, Accela contends that Good and Starnes breached their fiduciary duties to Dent Zone and its other shareholders in self-dealing and mismanagement of company assets. Appellants here, like the majority shareholders in *Martin*, sought dismissal under the TCPA, claiming the acts alleged were an exercise of their right of association. Both groups asserted that their acts related to a subject of public concern, namely, the operation of their business. Specifically, the majority shareholders in *Martin* cited their provision of telecommunications services, and appellants here cite their efforts at regulatory compliance. However, we conclude, as did the *Martin* court, that the claims at issue do not arise from any such effort on appellants' part but transactions concerning appellants' "private financial or private business interests." Specifically, Accela's claims arise from appellants' alleged self-dealing via loans, stock exchanges, and Nobilis transactions unfavorable to Dent Zone. Thus, just as the tortious acts alleged

in *Martin* did not constitute an exercise of the right of association, the self-dealing and breach of fiduciary duties alleged here do not constitute an exercise of the right of association. Accordingly, Accela's claims are not based on or in response to appellants' exercise of the right of association, therefore we overrule appellants' first issue.[6] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

The remaining steps of the TCPA analysis are predicated on a finding that the TCPA applies to the claims at issue. *See Creative Oil*, 591 S.W.3d at 132. Having concluded the TCPA does not apply, we need not address appellants' remaining issues, which concern the remaining steps in the TCPA analysis.

## CONCLUSION

Appellants failed to satisfy their initial burden to demonstrate that Accela's claims are based on or in response to the exercise of their right of association.

---

[6] Appellants assert in a "collateral issue" to their first issue that the trial court should not have considered Accela's late-filed amended petition when ruling on appellants' motion to dismiss. According to appellants, the amended petition "de-emphasized Appellants' activities that are related to a public concern (property and casualty insurance)." Appellants, however, do not explain this conclusion. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Having concluded that appellants failed to demonstrate that Accela's claims fall under the TCPA, we need not address this "collateral issue." Regardless, appellants cite no evidence in the record indicating that the trial court considered the amended petition. Moreover, any error in doing so was harmless because the record reflects that Accela's amended petition alleged the same facts and claims as its original petition, merely adding factual allegations. *See* TEX. R. APP. P. 44.1(a)(1). Additionally, Accela's response to appellants' motion generally recited these same allegations, with supporting evidence.

Accordingly, we affirm the trial court's denial of appellants' motion to dismiss.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE


201097F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TROY GOOD, STAN STARNES, AND NOBILIS GROUP, INC., Appellants

No. 05-20-01097-CV     V.

ACCELA CAPITAL SERVICES, INC., DERIVATIVELY ON BEHALF OF DENT ZONE, INC., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-12092. Opinion delivered by Justice Partida-Kipness. Justices Myers and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ACCELA CAPITAL SERVICES, INC., DERIVATIVELY ON BEHALF OF DENT ZONE, INC. recover its costs of this appeal from appellant TROY GOOD, STAN STARNES, AND NOBILIS GROUP, INC..

Judgment entered August 24, 2021