

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00042-CV

**KEARY BARNES AND BVW INTERESTS, LLC,**

**Appellants**

**v.**

**SUPREME SERVICE & SUPPLY CO., INC.,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 18-002495-CV-85

---

## MEMORANDUM OPINION

---

Supreme Service & Supply Company, Inc. (Supreme) sued Keary Barnes (Barnes) and BVW Interests, LLC (BVW), among others. Barnes and BVW filed a motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA). The trial court denied the motion to dismiss, and this interlocutory appeal ensued. We will affirm.

## Factual and Procedural Background

Supreme originally sued Combatt Oilfield Solutions, LLC (Combatt) and Intense Wireline Solutions, LLC (Intense Wireline), alleging as follows in its original petition: Supreme entered into an agreement with Combatt to provide materials, equipment, labor, and services to Combatt in connection with maintaining, repairing, and operating oil and gas wells. Combatt failed to pay for the goods and services that Supreme provided. Supreme contacted Combatt demanding payment and informed Combatt that if it did not pay, Supreme would be forced to file liens on the oil and gas wells and leases on which Supreme had worked. Combatt responded that it was selling its assets to Intense Wireline and that it would use the proceeds from the sale to pay Supreme. Relying on Combatt's representations, Supreme forewent the filing of liens at that time. Subsequently, Combatt sold its assets to Intense Wireline but did not use the sale proceeds to pay Supreme. When Supreme thereafter began sending lien notice letters to the owners of the oil and gas wells and leases on which Supreme had worked, Supreme learned that it no longer had any lien rights because the owners had already paid Combatt in full for Supreme's work. Supreme therefore sued Combatt on a sworn account, for breach of contract, and alternatively, for quantum meruit. Supreme further asserted causes of action against Combatt for fraud and fraudulent transfer. Supreme sued Intense Wireline for fraudulent transfer.

Combatt failed to answer Supreme's lawsuit, and Supreme was granted a default judgment against Combatt. Supreme's claims against Combatt, on which the default judgment was granted, were then severed from the underlying cause.

After the severance, Supreme amended its petition and added Barnes and BVW as defendants, as well as CF Equipment Financing, LLC (CF Equipment), Catalyst Finance, L.P., Catalyst Financial Company, and B&V Partners, LLC, individually and doing business as Complete Oilfield Solutions (B&V Partners). Supreme alleged that these added defendants "are affiliates and insiders of each other and of Combatt" and that after Combatt's sale of its assets to Intense Wireline, these defendants "used their ownership and control of Combatt to pay themselves instead of Combatt's legitimate non-insider creditor, Supreme." More specifically, Supreme alleged: Combatt has been insolvent since its inception, a fact of which Barnes, BVW, CF Equipment, Catalyst Financial Company, and B&V Partners were all aware. Barnes is the majority owner of, and was the ultimate decisionmaker for, Combatt. Barnes also works for CF Equipment, is an owner and the Senior Vice President of Catalyst Financial Company, which is the general partner of Catalyst Finance, L.P., and is an owner of BVW and B&V Partners. While working in these capacities, Barnes negotiated the sale of Combatt's assets to Intense Wireline, which resulted in most of the proceeds being paid directly to CF Equipment, not to Combatt.

Supreme further alleged in its amended petition: Matt Vaughan is a business partner of Barnes. Vaughan acted as a manager of Combatt but reported to Barnes. Vaughan also had an interest in and used to work at Catalyst Financial Company and is an owner of B&V Partners. When Supreme contacted Combatt demanding payment and informed Combatt that if it did not pay, Supreme would be forced to file liens on the oil and gas wells and leases on which Supreme had worked, Vaughan was the one who had made the false promises to Supreme that Combatt would use the proceeds from the sale of its assets to Intense Wireline to pay Supreme. The information that Vaughan communicated to Supreme, however, "came from" Barnes.

Supreme sued Barnes, BVW, CF Equipment, Catalyst Finance, L.P., Catalyst Financial Company, and B&V Partners for fraudulent transfer and conspiracy to commit fraudulent transfers. Supreme alleged an additional cause of action for fraud against Barnes. Supreme also requested declaratory relief for recharacterization and equitable subordination of any debts owed to Barnes, BVW, CF Equipment, Catalyst Finance, L.P., Catalyst Financial Company, and B&V Partners.

Barnes and BVW subsequently filed their motion to dismiss Supreme's claims under the version of the TCPA in effect at that time. [1]  After a hearing, the trial court denied the motion to dismiss.

---

[1] The TCPA was substantially amended in 2019, but the 2019 amendments apply only to actions filed on or after September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12. The underlying claims against Barnes and BVW were filed in August 2019; thus, the 2019 amendments to the TCPA do not apply

## Issue

Barnes and BVW contend the trial court erred in denying their TCPA motion to dismiss Supreme's claims against them.

## Standard of Review

We review a trial court's ruling on a motion to dismiss under the TCPA *de novo*. *Martin v. Walker*, 606 S.W.3d 565, 567 (Tex. App.—Waco 2020, pet. denied); *Holcomb v. Waller County*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). In reviewing the trial court's ruling, we "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.006(a) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). "We view the pleadings and evidence in the light most favorable to the nonmovant." *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied).

## Discussion

"[T]he . . . TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (citing House Comm. on Judiciary & Civ. Juris., Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011)). The TCPA establishes a three-step process for the expedited dismissal of

in this case, and our discussion of the TCPA in this opinion is of the version of the TCPA in effect before September 1, 2019. *See id.*

such actions.  *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018) (per curiam).  As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the "legal action" against it.  *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.005(b) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)).  A "legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."  Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.001(6) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6)).  Dismissal under the TCPA is therefore determined on a claim-by-claim basis.  *Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 122 (Tex. App.—Houston [14th Dist.] 2020, no pet.).  If the moving party meets the initial burden of showing by a preponderance of the evidence that the TCPA properly applies to the legal action against it, the nonmoving party must then establish by clear and specific evidence a prima facie case for each essential element of its claims against the moving party.  *Youngkin*, 546 S.W.3d at 679; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).  If the nonmoving party satisfies that requirement, the burden finally shifts back to the moving party to prove by a preponderance of the evidence each essential element of any valid defenses to the nonmoving party's claims.  *Youngkin*, 546 S.W.3d at 679–80; *see* Act of May 24, 2013, 83d

Leg., R.S., ch. 1042, § 2 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)).

We begin with the threshold question of whether the moving parties here—Barnes and BVW—showed by a preponderance of the evidence that the TCPA applies to Supreme's legal actions against them.

Under the version of the TCPA that governs this case, a party may invoke the TCPA dismissal procedure if the party shows by a preponderance of the evidence that the legal action against it "is based on, relates to, or is in response to [the] party's exercise of the right of free speech, right to petition, or right of association." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.003(a) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)); *see Youngkin*, 546 S.W.3d at 680. Barnes and BVW contend that Supreme's claims against them are based on or relate to their exercise of the right of free speech and/or the right of association. The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). The "exercise of the right of association" means "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.001(2) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2)).

COMMUNICATION

First, both the exercise of the right of free speech and the exercise of the right of association, as defined by the TCPA, require a "communication." *Id*.; TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "communication" is broadly defined by the TCPA as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1).

The communication that Supreme alleged in its amended petition was that Combatt urged Supreme not to file liens on the oil and gas wells and leases on which Supreme worked for Combatt and Combatt's customers because Combatt was selling some of its assets and would use the money that it received from the sale to pay the amount it owed to Supreme. Supreme then clarified that Combatt's representations to Supreme were made specifically by Vaughan. Supreme alleged, however, that the information that Vaughan communicated to Supreme "came from" Barnes. Based on the foregoing, we conclude that Supreme impliedly alleged that Barnes made some form of communication to Vaughan that consisted of the information regarding Combatt that Vaughan then conveyed to Supreme.

Additionally, Barnes and BVW argue here that because Supreme expressly alleged in its amended petition that Combatt, Barnes, BVW, CF Equipment, Catalyst Finance, L.P., Catalyst Financial Company, and B&V Partners all conspired to make fraudulent transfers, Supreme also impliedly alleged in its amended petition that Combatt, Barnes,

BVW, CF Equipment, Catalyst Finance, L.P., Catalyst Financial Company, and B&V Partners made communications amongst themselves regarding the alleged fraudulent transfers. *See generally Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 651 n.9 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (stating that a required element of civil conspiracy is "specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means," which "inherently requires a meeting of the minds on the object or course of action, which involves, of course, communication" (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017))). We assume without deciding that Supreme impliedly alleged such communications by Barnes and BVW.

EXERCISE OF RIGHT OF FREE SPEECH

Next, the exercise of the right of free speech, as defined by the TCPA, requires that the communication be "made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.001(7) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)). Barnes and BVW contend here that although the alleged communications concerning Combatt's intention and ability to pay Supreme to prevent Supreme from filing liens on the property

of Combatt's customers were private communications, the alleged communications were made in connection with a matter of public concern—an issue related to economic or community well-being.

Private communications fall within the TCPA's definition of the exercise of the right of free speech if they are made in connection with a matter of public concern. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). But the Texas Supreme Court has made clear that "not every communication related somehow to one of the broad categories set out in section 27.001(7) [of the Civil Practice and Remedies Code] always regards a matter of public concern." *Creative Oil & Gas, LLC v. Lona Hills Ranch*, LLC, 591 S.W.3d 127, 137 (Tex. 2019). The court explained its reasoning as follows:

> [W]hen construing the TCPA's list of the kinds of things meant by "matter of public concern," we should not ignore the common meaning of the words being defined. The phrase "matter of public concern" commonly refers to matters "of political, social, or other concern to the community," as opposed to purely private matters.

*Id.* at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). Therefore, a business dispute "affecting only the fortunes of the private parties involved" is not a matter of public concern. *Id.* at 137; *see Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied); *see also Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.).

Here, the alleged communications between Barnes and Vaughan were about the payment of a debt owed by Combatt to Supreme. The alleged communications were private communications about a private business dispute. Barnes and BVW argue that the alleged communications were nevertheless made in connection with a matter of public concern because the alleged communications were made to prevent Supreme from filing liens on the property of Combatt's customers. Barnes and BVW contend that the alleged communications affected the sale or transferability of real property and had an impact on more than just the personal financial well-being of the private parties involved in this dispute because the alleged communications had an impact on the financial well-being of Combatt's customers. But even though some of Combatt's customers may have been affected by the alleged communications, those customers consisted of a limited group of those on whose oil and gas wells and leases Supreme had worked for Combatt. There is no indication that the alleged communications were relevant to the broader community or to a subset of the broader community. *See Newpark Mats & Integrated Servs., LLC v. Cahoon Enters., LLC*, 605 S.W.3d 671, 681–82 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 240 (Tex. App.—Eastland 2019, no pet.) ("A communication is related to 'community well-being' if it affects the well-being of the community at large or at least a subset of its residents."). Accordingly, we conclude that the alleged communications were not made in connection with a matter of public concern.

Because the alleged communications were not made in connection with a matter of public concern, Barnes and BVW did not meet their burden of showing, by a preponderance of the evidence, that Supreme's legal actions against them were based on, related to, or were in response to an exercise of their right of free speech. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.005(b) (amended 2019).

EXERCISE OF RIGHT OF ASSOCIATION

Finally, the exercise of the right of association, as defined by the TCPA, requires that a communication be "between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.001(2) (amended 2019). Barnes and BVW argue that interpreting this definition to include an element of public interest requires reading language into the statute that is not there. Supreme responds that the phrase "common interest" must be interpreted to include a public component.

The TCPA does not define the word "common." We must therefore construe the word "according to [its] plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted)). "To determine a statutory term's common, ordinary meaning, we typically look first to [its] dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs*

*of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). The relevant dictionary meaning of the word "common" is "of or relating to a community at large: public" or "known to the community." Common, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/common (last visited on January 10, 2023).

> Based on this definition, the term "common interest," as used in the TCPA, means something more than allegedly tortious communications between individuals in the pursuit of a private business endeavor.
>
> This construction of the term aligns with the conclusion of several of our sister courts of appeals that the exercise of the right of association under the TCPA requires a public or citizen component. *See Tex. Custom Wine Works, LLC v. Talcott*, [598 S.W.3d 380, 386 (Tex. App.—Amarillo 2020, no pet.)] (concluding that the legislature intended for the right of association "to require some degree of group participation involving an expression about a matter of public interest"); *Gaskamp* [*v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc)] (holding that, in the context of the TCPA, "common" means "of or relating to a community at large: public"); *Bandin*[, 590 S.W.3d at 653] (concluding that the type of communication envisioned by the TCPA does not encompass a conspiracy to convert or unlawfully appropriate property); *Dyer v. Medoc Health Servs.*, LLC, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (concluding that the exercise of the right of association under the TCPA must involve public or citizen participation); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied) ("[T]he plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of 'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit.").[2]

---

2 *See also Segundo Navarro Drilling, Ltd. v. San Roman Ranch Min. Partners, Ltd.*, 612 S.W.3d 489, 493–96 (Tex. App.—San Antonio 2020, pet. denied).

*Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *6 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.).

Barnes and BVW point out, however, that several of our sister courts of appeals have also held that the exercise of the right of association does not require an element of public interest and that communications between alleged tortfeasors in furtherance of a shared business interest do constitute the exercise of the right of association under the TCPA. *See, e.g., HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.); *Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 184–85 (Tex. App.—Tyler 2018, no pet.); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). But, as indicated above, we are more persuaded by the thorough analyses in the decisions from those of our sister courts of appeals that have held that the exercise of the right of association under the TCPA requires a public component.

Barnes and BVW also contend that the 2019 legislative amendments to the TCPA support an interpretation that the exercise of the right of association does not require an element of public interest. The post-amendment definition of the exercise of the right of association is "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern."

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2). Barnes and BVW argue that this post-amendment definition suggests that the original phrase "common interests" did not already include "relating to . . . a matter of public concern." *See id.* We disagree.

"When the meaning of an existing law is uncertain, the Legislature's later interpretation of it is highly persuasive." *Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996).

> As discussed, Texas courts have reached divergent conclusions when tasked with determining whether alleged tortfeasors, by conspiring and colluding with one another to commit torts in furtherance of their own pecuniary interests, had exercised their right of association.
>
> We presume that the Legislature was aware of the conflicting holdings in the caselaw when it enacted the 2019 amendments. *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding) (explaining that courts presume Legislature "is aware of relevant case law when it enacts or modifies statutes"). With this awareness, the Legislature elected to limit the object of the exercise of the right of association to "common interests[ ] relating to a governmental proceeding or a matter of public concern." Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 1, sec. 27.001(2) . . . (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2)). In amending the statute, the Legislature chose to define "common interests" in a manner most in line with the holdings in *Kawcak* and *Dyer*, which determined that tortfeasors, conspiring and colluding for their own private financial gain, are not entitled to protection under the right of association. *See Dyer*, 573 S.W.3d at 427; *Kawcak*, 582 S.W.3d at 588. By limiting "common interests" to those interests related to government proceedings or matters of public concern (as defined in the amended statute), the Legislature clarified that the exercise of the right of association was never intended to include an alleged tortfeasor's acts taken in furtherance of private interests.

*Gaskamp*, 596 S.W.3d at 475–76.

The alleged communications here were private communications about a private business dispute and private communications among alleged co-conspirators. There is no allegation that the communications involved any public or community interests. Therefore, Barnes and BVW did not meet their burden of showing, by a preponderance of the evidence, that Supreme's legal actions against them were based on, related to, or were in response to an exercise of their right of association. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.005(b) (amended 2019).

Because Barnes and BVW did not meet their burden of showing by a preponderance of the evidence that the TCPA applies to Supreme's legal actions against them, we need not reach whether Supreme established by clear and specific evidence a prima facie case for each essential element of its claims against Barnes and BVW or whether Barnes and BVW proved by a preponderance of the evidence each essential element of any valid defenses to Supreme's claims.

**Conclusion**

In light of the foregoing, we overrule Barnes's and BVW's issue and affirm the trial court's order denying their TCPA motion to dismiss.

MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith

Affirmed

Opinion delivered and filed January 18, 2023

[CV06]

